[No. D027124. Fourth Dist., Div. One. Nov. 10, 1997.]

THE PEOPLE, Plaintiff and Appellant, v.
ALBERT DENNIS SHERROD, Defendant and Respondent.

## COUNSEL

Paul J. Pfingst, District Attorney, Thomas F. McArdle and Anthony Lovett, Deputy District Attorneys, for Plaintiff and Appellant.

Russell S. Babcock, under appointment by the Court of Appeal, for Defendant and Respondent.

## OPINION

**McINTYRE, J.**—A jury found Albert Dennis Sherrod guilty of attempted premeditated murder; assault with a deadly weapon by means of force likely to produce great bodily injury; and corporal injury to a spouse and/or roommate. However, the trial court ordered a new trial, concluding it had erred in refusing to continue the original trial and that as a result, Sherrod was denied a fair trial.

The People appeal the order for new trial contending (1) the supervising judge correctly denied Sherrod's motion to continue the trial; (2) the trial judge correctly refused to continue the trial in deference to the supervising judge's earlier ruling; (3) Sherrod was not entitled to a continuance in order to obtain advisory counsel; and (4) Sherrod failed to show, and the court failed to find, that it was reasonably probable that a result more favorable to him would have been reached if a continuance had been granted, and thus, there was no miscarriage of justice requiring reversal.

The People's contentions are unavailing. The trial court did not abuse its discretion in ordering a new trial. Moreover, the denial of a fair trial in itself

results in a miscarriage of justice, without the defendant having to show it is reasonably probable that a more favorable result would have been reached in absence of the error. (See *People* v. *McKay* (1951) 37 Cal.2d 792, 798 [236 P.2d 145].) Thus, we affirm the new trial order.

## FACTUAL AND PROCEDURAL BACKGROUND

On January 19, 1995, Shirley Ann Green told Sherrod that she wished to end their relationship, and in response, Sherrod destroyed many of her possessions and told her he would not let her stay in San Diego. That night, Sherrod broke through the window of Green's motel room and stabbed her several times in the head and shoulders with a knife. Green managed to run out her front door, but Sherrod chased her down the hall and hit her several times with a chair. He stopped his attack and started to run away when a bystander told him (falsely) that the police had arrived. Three bystanders caught Sherrod and detained him in the motel office until the police came. During this period, Sherrod told the motel desk clerk that if the knife had not broken, he would have killed Green.

While Sherrod was being transported to the police station, he said again that he would have killed Green if the knife had not broken, that that was what he was trying to do, and that he had been looking for her up and down "the boulevard" that night. In addition, during the jail intake process, Sherrod said he had meant to kill Green, and stated "I was trying for her heart. I tried to puncture her heart."[1]

Green was taken to the hospital and treated for several lacerations on her face, head, shoulders and back, a stab wound that went through her ear, and a partially collapsed lung.

### Procedural History

On July 3, 1995, the date set for trial, the supervising judge of the Superior Court of San Diego County, East County Branch, granted Sherrod's motion to represent himself, continued the trial date to August 14, 1995, and directed the sheriff to give Sherrod the privileges of "pro per" status. Such status was not recognized at the jail, however, and Sherrod could not gain access to the law library. He complained by letter to the supervising judge, who, on July 14, 1995, ordered that a copy of the letter be given personally to the sheriff's legal counsel "to take any necessary action." Sherrod was then scheduled for an hour and a half of library time on July 18, 1995.

---

[1]Sherrod apparently made several other damaging statements when he was interviewed by police. The People did not provide the court with the transcript of this interview, however.

However, it does not appear he was actually granted access to the library on this date.

On August 4, 1995, Sherrod asked for the appointment of an investigator, a paralegal, and "an alternative defense counsel" to assist him, and informed the court that he had not been allowed to go to the library until the previous day and had not had time to prepare his case. The court would not address the issue of Sherrod's library access because it was not part of his written motion and no representative from the sheriff's department was present.

The court granted the request for an investigator, and Sherrod replied, "That's all I want." The court then asked: "What is this about alternate defense counsel?" and Sherrod responded, "Well, maybe later, but if you could grant it at the same time as now, I would appreciate it." The court asked: "What do you mean by 'alternate defense counsel'? Do you want help later, co-counsel, back-up, stand-by?" Sherrod replied: "Well, your honor, could we just strike that? I prefer not to even ask. I don't want alternate defense counsel. If I get a private investigator, that's my most important thing."

The district attorney then informed the court that the previous week, her investigator had attempted to deliver a videotape and audiotape and transcript of Sherrod's police interview to him in jail, but was not permitted to do so. The court directed her to give this discovery to Sherrod at the hearing, and ordered the sheriff to provide him with the opportunity to view and listen to the tapes. Sherrod again said he had only been allowed to go to the law library one time and requested a continuance of the trial. The court granted this request and set the trial for September 18, 1995.

The order appointing an investigator and allowing him access to Sherrod in jail was not signed until August 31, 1995, and the two did not meet until sometime after this date—perhaps not until a week before trial. On September 10, 1995, Sherrod drafted a request for a continuance "Due to the complexity of the volume of documents to be reviewed" and because his investigator had just been provided on September 5. He also requested a paralegal and a "legal advisor." This document was filed on September 14; however, there was never a hearing on these requests.

At the trial call on September 18, Sherrod announced he was not ready for trial and needed more time. The supervising judge denied a continuance and assigned the case to be tried before Judge Victor Bianchini. Thereafter, Sherrod complained to the trial court (Judge Bianchini) that his motion for continuance had been denied and that he had been denied the paralegal and

legal adviser he had requested. He also complained that he could not get access to the typewriters at the jail, and stated "I don't have time to do anything." However, he also requested a "speedy trial."

The trial court asked Sherrod about his request for a legal adviser, and Sherrod told him he had "put it in writing" the previous week. The court could not find the document Sherrod had filed on September 14, but stated it would attempt to appoint Sherrod a legal adviser and start the case the next day. On September 19, 1995, the court informed Sherrod that he could not find a legal adviser who would accept the case without a continuance, and that it did not feel it could grant a continuance since the supervising judge had already denied Sherrod's continuance motion. It did appoint Sherrod a paralegal, however. The court then bifurcated the trial on Sherrod's prior convictions.

Sherrod indicated he wanted to prove that Green had a crack cocaine problem, was violent and that he had to defend himself, and stated he wished to call Green's mother and former boyfriend for this purpose. He also wanted to discredit Green with evidence of her prior convictions. The court asked if he had subpoenaed any witnesses or knew of any felony convictions and Sherrod replied that his investigator was working on it, but he had not heard from him in a week. Before jury selection, Sherrod again expressed concern about being able to locate his witnesses in time because his investigator had not had time to work on the case, and said he thought he "should have time to prepare." However, the trial court informed Sherrod that it was "somewhat handcuffed"—that it did not believe it had the power to continue the trial, because a continuance had been denied by the supervising judge.

After the prosecution rested, Sherrod put on one witness, the manager of the motel in which Green lived. A medical expert had been lined up to testify for the defense, but he refused at the last minute because of an unrelated matter, and was not under subpoena. At that point, Sherrod and his investigator had been unable to secure any other witnesses, and thus Sherrod rested his case.

The jury found Sherrod guilty of all charges. On February 13, 1996, the trial court found true allegations that Sherrod had suffered one "prison prior" conviction and one prior serious felony conviction.

Thereafter, Sherrod moved for a new trial. The trial court granted this motion, concluding that it had denied Sherrod's requests for a continuance under the erroneous assumption that it did not have the power to continue the trial because a motion to continue had previously been denied by the

supervising judge. The court determined that as a result, Sherrod was not given adequate time and was prejudiced in his ability to prepare his case, which resulted in the denial of a fair trial.

## DISCUSSION

### *The Trial Judge Had the Power and Discretion to Continue the Trial*

The People contend that the supervising judge correctly denied Sherrod's motion for a continuance, and that the trial judge correctly refused to continue the trial in deference to this ruling because Sherrod had shown no changed circumstances. This contention misses the mark, however.

When a matter is assigned for the purposes of trial, the trial judge has the authority to grant a continuance for good cause shown regardless of whether a continuance was denied by the supervising or presiding judge. This is because it is the obligation of "the trial judge to assure that a criminal defendant is afforded a bona fide and fair adversary adjudication." (*People* v. *McKenzie* (1983) 34 Cal.3d 616, 626 [194 Cal.Rptr. 462, 668 P.2d 769].) To carry out this duty, the trial judge has the power to exercise reasonable control over all proceedings connected to the litigation before him or her, which power includes exercising discretion to continue the trial. (*Id.* at pp. 626, 629; *People* v. *Cruz* (1978) 83 Cal.App.3d 308, 324 [147 Cal.Rptr. 740].) Thus, the court correctly determined that it had erred in concluding that it did not have the power to continue the trial.

### *The Court Did Not Abuse Its Discretion in Concluding That Sherrod Was Denied a Fair Trial and in Ordering a New Trial*

The trial court ordered a new trial because it concluded that Sherrod was denied a fair trial as a result of its error in denying a continuance. However, the People contend Sherrod was not entitled to a continuance, and even if he were, the court erred in ordering a new trial because Sherrod failed to show that the denial of a continuance resulted in a "miscarriage of justice." They argue that to make this showing, Sherrod had to demonstrate "that it is reasonably probable that a result more favorable to [him] would have been reached" if a continuance had been granted. (*People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243].)

The People's contentions ignore two rules that are essential in analyzing the issue in this case, however. First, criminal defendants, regardless of their guilt or innocence, are entitled to a fair trial, and the denial of a fair trial, in and of itself, results in a miscarriage of justice, whether or not the

defendant meets the *Watson* standard of prejudicial error. (*People* v. *Oliver* (1987) 196 Cal.App.3d 423, 431-432 [241 Cal.Rptr. 804]; see also *People* v. *McKay, supra,* 37 Cal.2d at p. 798; *People* v. *Mahoney* (1927) 201 Cal. 618, 626-627 [258 P. 607].) Second, the trial court may grant a new trial if it determines that the defendant has been denied a fair trial (*People* v. *Oliver* (1975) 46 Cal.App.3d 747, 751-752 [120 Cal.Rptr. 368]; *People* v. *Davis* (1973) 31 Cal.App.3d 106, 110-111 [106 Cal.Rptr. 897]), and this determination " ' "rests so completely within the court's discretion that its action will not be disturbed unless a manifest and unmistakable abuse of discretion clearly appears." [Citations.]' " (*People* v. *Cox* (1991) 53 Cal.3d 618, 694 [280 Cal.Rptr. 692, 809 P.2d 351], quoting *People* v. *Williams* (1988) 45 Cal.3d 1268, 1318 [248 Cal.Rptr. 834, 756 P.2d 221].)

We conclude there was no such abuse of discretion here. ■ A self-represented or "pro per" defendant must be given adequate time and opportunity to prepare for trial. (*People* v. *Maddox* (1967) 67 Cal.2d 647, 652-653, 655 [63 Cal.Rptr. 371, 433 P.2d 163] [regardless of whether the defendant shows specific statutory grounds for a continuance, he has a "general constitutional right to adequate time for the preparation of his defense"]; *People* v. *Cruz, supra,* 83 Cal.App.3d at p. 324.) Such a defendant is not entitled to any greater privileges or time than what is accorded attorneys; but neither is he entitled to any *less*. (*People* v. *Maddox, supra,* 67 Cal.2d at p. 653.)

■ The People contend Sherrod had ample time to prepare for trial in the two-and-a-half-month period between July 3, and September 18, 1995. This contention ignores the actual events of this case, however. Although Sherrod was given in propria persona status on July 3, 1995, such status was not recognized at the jail for almost two weeks, and he did not gain access to the library until the beginning of August. The prosecution was also prevented from turning over tapes and a transcript of Sherrod's police interview to him at the jail, and thus, he did not have access to this discovery until the court's order of August 4.

Moreover, Sherrod did not have the services of an investigator until the beginning of September, at the earliest. This did not leave enough time for the investigator to look into Sherrod's out-of-state convictions and to locate, interview and secure potential witnesses for the case-in-chief. As it turned out, the trial on Sherrod's prior convictions was bifurcated and took place at a much later date; thus, he was not prejudiced in his ability to prepare on this issue. However, it is apparent from the record that Sherrod did not know of, or plan on the trial being bifurcated, and his investigator needed to do too many things in too little time. Furthermore, even if it turned out that

Sherrod's potential witnesses would not have been helpful to him, it was important for him to be able to locate and interview them in order to develop and/or adjust his strategy—an essential part of trial preparation. (*People* v. *Cruz, supra,* 83 Cal.App.3d at pp. 323-325.) As it was, Sherrod went through the trial planning and hoping to call witnesses he never had time to locate, let alone interview.

Finally, Sherrod's request for advisory counsel, drafted on September 10 and filed on September 14, was never heard; rather, it was denied by default when the trial court concluded it could not continue the trial. This in itself was "serious error" because a court is required to consider and exercise its discretion in granting or denying a request by an individual acting in propria persona for advisory counsel. (*People* v. *Crandell* (1988) 46 Cal.3d 833, 860-861 [251 Cal.Rptr. 227, 760 P.2d 423]; *People* v. *Bigelow* (1984) 37 Cal.3d 731, 743 [209 Cal.Rptr. 328, 691 P.2d 994, 64 A.L.R.4th 723].) Here, it is clear from the record that if the trial court had realized it had the authority to continue the trial, it would have appointed advisory counsel for Sherrod. Moreover, this would have been a proper exercise of its discretion. (See *People* v. *Crandell, supra,* 46 Cal.3d at p. 860; *People* v. *Bigelow, supra,* 37 Cal.3d at p. 742.) As it was, the court tried, and failed, to find counsel who would serve in an advisory capacity without a continuance.

Based on this record, we cannot say that the trial court abused its discretion in ordering a new trial.

DISPOSITION

The order for new trial is affirmed.

Work, Acting P. J., and McDonald, J., concurred.