[No. D057119. Fourth Dist., Div. One. Aug. 11, 2011.]

THE PEOPLE, Plaintiff and Appellant, v.
KENNETH BOWLES, Defendant and Respondent.

320

COUNSEL

Bonnie M. Dumanis, District Attorney, Laura Tanney and Craig E. Fisher, Deputy District Attorneys, for Plaintiff and Appellant.

Henry C. Coker, Public Defender, Randy Mize, Chief Deputy Public Defender, Matthew Braner, Sherry Stone and Kathleen Cannon, Deputy Public Defenders, for Defendant and Respondent.

OPINION

**McINTYRE, J.**—In this case, we conclude that a trial court's power to grant sanctions under Penal Code section 1054.5, subdivision (b) (section

1054.5(b)) based on the prosecution's failure to disclose exculpatory evidence is limited to a circumstance where the verdict has not yet been rendered on the charged crimes and while the trial court has jurisdiction over the criminal case. (Undesignated statutory references are to the Penal Code.) Accordingly, we conclude the trial court erred by granting a new trial as a discovery sanction under section 1054.5(b) after the jury rendered its verdict on the charges against defendant and the trial court conducted the bifurcated trial on the alleged prior offenses.

## FACTUAL AND PROCEDURAL BACKGROUND

On January 29, 2009, David Meyer left his unlocked bicycle by the front entrance of a Vons store located on South Santa Fe Avenue in Vista, California. (All further dates are in 2009.) When he returned, the bike was missing. The store manager saw the incident, but believed that a friend of Meyer's had taken the bike. Sheriff's Deputy Michael Proffitt responded to the theft report and reviewed the security video with the store manager. The time stamp on the store video indicated that the crime occurred at 2:06 p.m.

A few weeks later, Meyer received a telephone call from a friend telling Meyer that he had found the wheel from Meyer's bike in a bicycle shop. Meyer later identified a distinctive wheel as being from his bike. Meyer contacted Sheriff's Detective Denise McGehee, to let her know of his discovery. It turned out that an innocent third party had purchased Meyer's stolen bike from the Tri-City Pawn Shop, and had taken the rear wheel to the bicycle shop for repairs.

Sylvia Gonzalez owns the Tri-City Pawn Shop and works at the store with her son, Steven Castaneda. The shop is located about three or four blocks from the Vons on South Santa Fe Avenue. When individuals sell or pawn an item they must show a valid state photo identification card or driver's license. Information from the picture identification, such as birthday and address, must be entered onto a state mandated pawn slip, which is then printed out from the computer so the person can sign it and provide a right thumbprint.

At 2:06 in the afternoon on January 29, the pawnshop purchased a DVD player. The pawn slip for the DVD player listed defendant Kenneth Bowles as the seller. Later that afternoon, the pawnshop purchased a bike with a black frame and green rims. The pawn slip listed Bowles again as the seller. As required by law, the pawnshop provided copies of all pawn slips to the sheriff's department.

In August, Detective McGehee was assigned a second bicycle theft case for an unlocked bicycle that had been stolen from the front of a CVS store

located on Escondido Avenue and Rancho Santa Fe in Vista, California. After receiving the video surveillance of the theft, Detective McGehee prepared a "be on the lookout" bulletin showing photographs of an individual stealing the bicycle.

Sheriff's Deputy Timothy Clark reviewed the bulletin for the second bike theft. He recognized the person in the photograph as Bowles. Deputy Clark ultimately arrested Bowles and brought him to an interview room at the Vista station, obtained a *Miranda* waiver, and interviewed him. (*Miranda v. Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602].) In response to questioning, Bowles told Deputy Clark that he had purchased a black bike with green wheel forks from an individual for $20, and that he later pawned the bike. Bowles denied stealing a bike from the Vons on South Santa Fe Avenue. Although Bowles initially denied stealing a bike from the CVS store, he later admitted being the person shown in the store surveillance photograph taking the bike.

A felony complaint charged Bowles in counts 1 and 4 with grand theft of Meyer's bicycle and the second bicycle, respectively. With respect to Meyer's bicycle, the complaint also charged Bowles with burglary (count 2) and receiving stolen property (count 3). It was further alleged that Bowles suffered two probation denial prior convictions and had two prison prior convictions. After count 4 was revised to allege petty theft, Bowles pleaded not guilty to all charges.

On November 18, Detective McGehee found the original pawn slips for Meyer's bike and the DVD player and gave them to the prosecutor. The prosecutor immediately requested that the fingerprints on the original pawn slips be examined because fingerprints could not be examined from copies.

That same day, a forensic technician for the district attorney's office examined the pawn slips and prepared a fingerprint examination report. On the original pawn slip for Meyer's bike, the forensic technician wrote "insufficient detail—inconclusive" because the fingerprint could not be matched to Bowles. Because the result had been inconclusive, the forensic technician did not include the information in the fingerprint examination report. She explained that she did not think to include the information because she had never come across an "inconclusive" result.

The fingerprint examination report, however, matched the fingerprint on the pawn slip for the DVD player to Bowles, and matched that print with other prints on file in connection with Bowles's prior convictions. The prosecutor gave defense counsel a piece of paper with copies of both pawn slips as they appeared before they were given to the forensic technician; thus,

they did not contain the forensic technician's handwritten notes. The prosecutor placed the original pawn slips into a packet of documents left with the court clerk that she planned to use to prove Bowles's prior conviction allegations.

Defense counsel remembered the pawn slip for the DVD player because she realized this document gave Bowles an alibi for the theft of Meyer's bike because Bowles could not be at two locations at the same time. Defense counsel never received a copy of the bicycle pawn slip with the forensic technician's writing on it, nor did she examine the exhibits the prosecutor had left with the court clerk. On November 19, defense counsel received a copy of the fingerprint examination report.

After bifurcating the trial on the prior conviction allegations, the matter proceeded to trial on November 30 and ended the next day. At trial, Castaneda identified Meyer's bicycle as one he purchased on January 29 while working for his mother at the Tri-City Pawn Shop. He also identified a copy of the pawn slip for the bike. That same day, Castaneda purchased a DVD player at the pawnshop. The pawn slip for the DVD player listed Bowles as the seller and the time of the transaction as 2:06 p.m. However, the Vons store surveillance video also showed that Meyer's bicycle was stolen that day at 2:06 p.m. Both Castaneda and Gonzalez testified that the computer should display the correct time, but sometimes the time listed is not correct, such as after the electricity goes off.

Castaneda could not identify anyone in the courtroom as the person from whom he bought Meyer's bike. Although Gonzalez initially identified Bowles as the seller of the bike, on cross-examination she explained that she did not have an independent recollection of him doing any transactions, only that he looked familiar. Deputy Proffitt identified Bowles as the person he saw on the surveillance video taking Meyer's bike. The store manager, however, could not say whether or not Bowles was the person she saw stealing the bike. The Vons store surveillance video had been erased and was not shown to the jury.

A jury found Bowles guilty as charged on all counts, except count 3 for receiving stolen property, which was an alternate to count 1. On December 7, the parties began a court trial on Bowles's prior conviction allegations. That day, defense counsel saw for the first time the forensic technician's handwritten notes on the original pawn slip for Meyer's bike. On December 8, defense counsel filed a "Notice and Motion for Dismissal for *Brady* [*v. Maryland* (1963) 373 U.S. 83 [10 L.Ed.2d 215, 83 S.Ct. 1194] (*Brady*)] Violations and Failure to Comply With Discovery Rules," with related points and authorities and a declaration. The motion was based upon the defense contention that the inconclusive fingerprint result on the pawn slip for Meyer's bicycle was

exculpatory information under subdivision (e) of section 1054.1 (section 1054.1(e)) and *Brady*. Defense sought dismissal of all charges or, in the alternative, striking of the prior conviction allegations. She did not request a new trial.

After the trial court found the prior conviction allegations true, it immediately began the hearing on the defense motion. The trial court heard testimony from the prosecutor and defense counsel. Defense counsel testified that she would have changed her trial strategy and her approach to the pawn slips if she had had the information that was omitted from the fingerprint examination report regarding the inconclusive fingerprint finding. During argument, counsel explained that knowing about the inconclusive print examination "could have poked some holes at whether that pawn slip was really made by Mr. Bowles." The trial court took the matter under submission after considering argument and additional briefing.

The trial court issued a written order denying the defense motion to dismiss the charges or strike the prior conviction allegations, but instead granted a new trial as to counts 1 and 2. The trial court also ruled that the evidence at issue could not be used in the People's case-in-chief on retrial.

Specifically, the trial court made the following factual findings: (1) the parties knew about the existence of the original pawn ticket and the fingerprint thereon when it was admitted into evidence at the preliminary hearing; (2) the People did not request a fingerprint comparison be done on the original pawn slip until November 18, the day before the date set for the start of the jury trial; (3) the forensic examiner's determination that the fingerprint on the original pawn slip was "inconclusive" was favorable to Bowles and exculpatory; (4) the prosecution used a copy of the pawn slip during trial of the charges, rather than the original pawn slip, even though the exhibits had been marked for identification at the same time; (5) the prosecutor intentionally omitted informing the defense that the forensic examiner determined that the fingerprint on the original pawn ticket was "inconclusive" by not including this information in the forensic examiner's report; and (6) once the prosecutor learned the forensic examination result for the original pawn slip, and that the result was not included in the fingerprint examination report, the prosecutor had an affirmative duty to give this information to the defense.

Based on these factual findings, the trial court concluded that there was no *Brady* violation. Although it found that the "inconclusive" fingerprint analysis was favorable to Bowles and exculpatory, the court determined that the evidence was not material as it could not find a reasonable probability of a different verdict had the evidence been presented at trial. However, it found a violation of section 1054.1. Citing section 1054.5(b), the trial court concluded

that it had discretion to fashion a lawful order. The trial court granted a new trial on counts 1 and 2 under section 1181, subdivision 8, and ordered that the original pawn ticket could not be used as evidence by the People in their case-in-chief. The People timely appealed from the order granting a new trial.

## DISCUSSION

### I. *Overview of* Brady *and the California Discovery Statutes*

■ The People have a constitutional and a statutory duty to disclose information to the defense. (*Izazaga v. Superior Court* (1991) 54 Cal.3d 356, 378 [285 Cal.Rptr. 231, 815 P.2d 304]; *People v. Bohannon* (2000) 82 Cal.App.4th 798, 804 [98 Cal.Rptr.2d 488] (*Bohannon*), disapproved on another ground in *People v. Zambrano* (2007) 41 Cal.4th 1082, 1135, fn. 13 [63 Cal.Rptr.3d 297, 163 P.3d 4] [*Zambrano* overruled on another ground in *People v. Doolin* (2009) 45 Cal.4th 390, 421, fn. 22 [87 Cal.Rptr.3d 209, 198 P.3d 11]].) The constitutional duty arises under the due process clause of the United States Constitution and requires the prosecution to disclose any material evidence exculpatory of the defendant irrespective of the good faith or bad faith of the prosecutor. (*Brady, supra,* 373 U.S. at p. 87; *In re Sassounian* (1995) 9 Cal.4th 535, 543 [37 Cal.Rptr.2d 446, 887 P.2d 527].) There are three components of a *Brady* violation: (1) the evidence must be favorable to the accused, meaning it is exculpatory, or impeaching; (2) the evidence must have been willfully or inadvertently suppressed by the State; and (3) prejudice must have ensued because the evidence was material to the issue of guilt and innocence of the accused by establishing a reasonable probability of a different result. (*People v. Salazar* (2005) 35 Cal.4th 1031, 1043 [29 Cal.Rptr.3d 16, 112 P.3d 14] (*Salazar*).) The materiality of the evidence " 'must be evaluated in the context of the entire record.' " (*In re Brown* (1998) 17 Cal.4th 873, 887 [72 Cal.Rptr.2d 698, 952 P.2d 715], quoting *United States v. Agurs* (1976) 427 U.S. 97, 112 [49 L.Ed.2d 342, 96 S.Ct. 2392].)

■ The California statutory discovery scheme (§ 1054 et seq.) requires that the prosecution disclose specified information to the defense, including any "exculpatory evidence," and "reports or statements of experts made in conjunction with the case." (§ 1054.1, subds. (e) & (f).) Absent good cause, such evidence must be disclosed at least 30 days prior to trial, or immediately if discovered or obtained within 30 days of trial. (§ 1054.7.) The trial court has broad discretion to fashion a remedy in the event of a discovery abuse to ensure that the defendant receives a fair trial. (*People v. Jenkins* (2000) 22 Cal.4th 900, 951 [95 Cal.Rptr.2d 377, 997 P.2d 1044].) The trial court may enforce the discovery statutes by ordering "immediate disclosure, contempt proceedings, delaying or prohibiting the testimony of a witness or the

presentation of real evidence, continuance of the matter, or any other lawful order." (§ 1054.5(b).) If these sanctions have been exhausted, the trial court may also prohibit the testimony of a witness. (§ 1054.5, subd. (c).) Finally, if required to do so by the Constitution of the United States, the trial court can dismiss a charge. (§ 1054.5, subd. (c).)

## II. *Propriety of the Sanctions Ordered*

The trial court noted that the possible sanctions listed in section 1054.5(b) were no longer available because the discovery violation came to light after the jury rendered its verdict on the criminal charges and after it had made true findings on the prior conviction allegations. After deciding against monetary sanctions or a contempt order, the trial court noted that section 1054.5(b) gave it discretion to fashion a "lawful order." Accordingly, it granted a new trial on counts 1 and 2 under section 1181, subdivision 8, which allows a court to grant a new trial based on new evidence.

The People assert the trial court erred in granting a new trial as a discovery sanction under section 1054.5 because sanctions under this statute are not available posttrial. We agree.

As a preliminary matter, the People contend the trial court erred in finding the inconclusive fingerprint result to be "exculpatory evidence" as this term is used in section 1054.1(e). They argue that the definition of exculpatory evidence is the same under the discovery statutes or *Brady*. Our high court has already rejected this argument, stating that section 1054.1(e) "requires the prosecution to disclose '[a]ny exculpatory evidence,' not just material exculpatory evidence." (*Barnett v. Superior Court* (2010) 50 Cal.4th 890, 901 [114 Cal.Rptr.3d 576, 237 P.3d 980].) Accordingly, we turn to whether sanctions under section 1054.5(b) were appropriate under the circumstances presented.

The California discovery scheme is to be interpreted to give effect to certain purposes, including preventing delay, saving time and promoting the ascertainment of truth. (§ 1054.) To further these purposes, a trial court has broad discretion to fashion a remedy in the event of discovery abuse to ensure that a defendant receives a fair trial. (*People v. Jenkins, supra,* 22 Cal.4th at p. 951.) Although a discovery sanction may include an element of punishment, the record must support a finding of significant prejudice or willful conduct. (*People v. Gonzales* (1994) 22 Cal.App.4th 1744, 1759 [28 Cal.Rptr.2d 325] ["[T]here is a distinction between having evidence and refusing to disclose, and discovering evidence and disclosing it at a time when it places the other side at a disadvantage."].)

Simply put, the purposes of the discovery statutes cannot be furthered where, as here, a jury has already rendered its verdict on the substantive charges against the defendant and the trial court has decided the remaining prior conviction allegations. Rather, in this situation any violation of a defendant's pretrial right to discovery is appropriately addressed by available posttrial remedies such as an appeal from the judgment (see *Bohannon*, *supra*, 82 Cal.App.4th 798), a motion for new trial (see *People v. Hoyos* (2007) 41 Cal.4th 872 [63 Cal.Rptr.3d 1, 162 P.3d 528] (*Hoyos*)), or a petition for habeas corpus (see *Salazar*, *supra*, 35 Cal.4th 1031).

In *Bohannon*, the defendant appealed from a judgment of conviction alleging that the prosecution had prevented him from obtaining the names and addresses of all witnesses in the case. (*Bohannon*, *supra*, 82 Cal.App.4th at pp. 801–802.) The *Bohannon* court noted that while this amounted to a violation of the prosecution's discovery obligations under subdivision (a) of section 1054.1, sanctions under section 1054.5 were available "only prior to the close of testimony and for so long as the trial court has jurisdiction of a criminal case. Thereafter, and barring circumstances that are clearly not present in this case, any discovery violation is measured by a posttrial standard." (*Bohannon*, *supra*, 82 Cal.App.4th at p. 805.) Accordingly, the *Bohannon* court applied *Brady* and examined whether the defendant had established "that the information not disclosed was exculpatory and that ' "there is a reasonable probability that, had the evidence been disclosed . . . , the result of the proceedings would have been different." ' " (*Bohannon*, *supra*, 82 Cal.App.4th at pp. 805–806.)

█ Similarly here, where a jury has already rendered its verdict on the substantive charges against a defendant and the trial court has decided any remaining allegations, the mere fact that the trial court has jurisdiction over the matter does not render sanctions under section 1054.5 appropriate. Once the trier of fact has rendered a verdict it is no longer possible to remedy a discovery violation by the sanctions outlined in section 1054.5; rather, the issue turns from remediation to an examination of whether the discovery violation prevented the defendant from obtaining a fair trial. Accordingly, the trial court erred by granting a new trial as a sanction under section 1054.5 as sanctions under this statute were no longer available. Based on this conclusion, we need not address the People's remaining arguments regarding the availability of a new trial motion as a remedy for a violation of section 1054.1.

Bowles asserts that reversing the order would be an idle act because on remand he would simply file a new trial motion and the trial court would undoubtedly grant it. We disagree.

Here, the trial court granted a new trial based on newly discovered evidence under section 1181, subdivision 8 as a discovery sanction. In doing so, the trial court did not review the matter under the appropriate standard, i.e., whether the newly discovered evidence would make a different result probable on retrial. (*People v. Ochoa* (1998) 19 Cal.4th 353, 473 [79 Cal.Rptr.2d 408, 966 P.2d 442].) Because this standard is very similar to the standard for a *Brady* violation (*Salazar, supra,* 35 Cal.4th at p. 1043), we cannot conclude that the trial court would have granted a new trial motion. Moreover, Bowles is not limited to requesting a new trial based on newly discovered evidence. He could seek a new trial alleging ineffective assistance of counsel (see, e.g., *People v. Fosselman* (1983) 33 Cal.3d 572, 582 [189 Cal.Rptr. 855, 659 P.2d 1144]); prosecutorial misconduct (see, e.g., *Zambrano, supra,* 41 Cal.4th at pp. 1187–1188; *People v. Zurinaga* (2007) 148 Cal.App.4th 1248, 1258–1260 [56 Cal.Rptr.3d 411]); a *Brady* violation (see, e.g., *Hoyos, supra,* 41 Cal.4th at p. 916); or denial of a fair trial (see, e.g., *People v. Sherrod* (1997) 59 Cal.App.4th 1168, 1174 [69 Cal.Rptr.2d 361]). We render no opinion on the trial court's conclusion that there was no *Brady* violation as this portion of the order is not before us. Nor do we render an opinion on the possible merits of any new trial motion.

## DISPOSITION

The order is reversed and the matter is remanded for further proceedings in accordance with this opinion.

Nares, Acting P. J., and O'Rourke, J., concurred.