Filed 1/16/14  P. v. Dixon CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>AL CAPONE DIXON et al.,<br><br>    Defendants;<br><br>CLAYTON D. CAMPBELL,<br><br>    Objector and Appellant. | F064986<br><br>(Super. Ct. No. BF139208A)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Kern County.  Colette M. Humphrey, Judge.

Sam Van Eerden for Objector and Appellant.

Lisa S. Green, District Attorney, John T. Mitchell, Deputy District Attorney, for Plaintiff and Respondent.

No appearance for Defendants.

-ooOoo-

This is an appeal from an order in a criminal case sanctioning a defense attorney, Clayton D. Campbell, who represented a defendant charged with carjacking and other

offenses. Campbell filed a civil lawsuit against the alleged carjacking victim on behalf of his criminal defense client in order to take the alleged victim's deposition. After Campbell took the deposition, he dismissed the civil suit. When the deputy district attorney learned that Campbell had taken the alleged victim's deposition under these circumstances, he sought sanctions against Campbell in the criminal case. The court granted the request for sanctions and ordered Campbell to purchase a deposition transcript to be provided to the alleged victim, to reimburse the alleged victim for any expenses he incurred in appearing for the deposition, and to report himself to the California State Bar.

On appeal, Campbell contends that the trial court was without authority to order sanctions. The court relied on "Marsy's Law" (Cal. Const., art. I, § 28),[*] criminal discovery statutes, and Code of Civil Procedure section 128, but Campbell argues that none of these provisions granted the court authority to sanction him in this case.

We conclude the trial court lacked statutory or constitutional authority to impose sanctions and reverse the sanctions order.

## FACTUAL AND PROCEDURAL HISTORIES

### Underlying criminal case

On January 27, 2011, Al Capone Dixon and another defendant were charged with carjacking, robbery, possession of a stolen vehicle, and participating in a criminal street gang.[†] The alleged carjacking victim was Bryon Albritton. At an evidentiary hearing,

---

[*]In 2008, California voters approved Proposition 9, the Victims' Bill of Rights Act of 2008, also known as Marsy's Law, which included both constitutional and statutory amendments. (*In re Vicks* (2013) 56 Cal.4th 274, 278, 282.) In this decision, Marsy's Law will refer specifically to article I, section 28, of the California Constitution.

[†]We take judicial notice of the public docket in Kern County Superior Court criminal case No. BF135404A/B, which is referred to by the deputy district attorney in this case. (Evid. Code, § 452, subd. (d); *People v. Felix* (2008) 169 Cal.App.4th 607, 614, fn. 9.)

Albritton testified that he had been contacted by defense investigators. He spoke to the investigators but then stopped the interview because there were gang members observing and Albritton was concerned about his family's safety.

At some point, Albritton and his family relocated. The move was prompted by a visit to his house by a person Albritton believed to be a gang member associated with the defendants. Albritton was at home, but he did not answer the door. He contacted law enforcement, and investigators from the district attorney's office helped him relocate.

Because of adverse pretrial rulings, the Kern County District Attorney dismissed the criminal case and initiated a new case against the same defendants on November 3, 2011. Dixon was charged with the same four offenses from the previous case, plus taking a vehicle without the owner's consent. The refiled case is the criminal case underlying this appeal.

On January 20, 2012, at a readiness conference for the criminal trial, Defense Attorney Campbell informed Deputy District Attorney Ken Russell that he had filed a civil lawsuit against Albritton on behalf of his client Dixon. Campbell told Russell that the only purpose of the lawsuit was to conduct an interview with Albritton. Campbell said he had taken Albritton's deposition, and he planned to use his deposition statements as impeachment at trial. Russell expressed his doubt about whether Campbell's conduct was legal or ethical. Campbell responded that he had consulted with an attorney and he intended to dismiss the civil lawsuit.

On January 30, 2012, the scheduled trial date, Dixon and the prosecution reached a plea agreement. Dixon entered a plea of no contest to the charge of gang participation and the remaining four counts were dismissed. According to Russell, the settlement was not related to Albritton's deposition; rather, Dixon decided to accept a plea offer that had been available for some time. Dixon received a four-year sentence.

*Dixon v. Albritton*

On November 10, 2011, Campbell filed a complaint on Dixon's behalf in Kern County Superior Court. (*Dixon v. Albritton* (Super. Ct. Kern County, 2011, No. S-1500-CV-275185).) The complaint asserted claims of breach of contract and fraud against Albritton, alleging that, on December 5, 2010, Albritton and Dixon "contracted to purchase a vehicle defendant [Albritton] stated belonged to him," but "defendant subsequently and fraudulently did not produce the vehicle's 'pink slip' and slanderously told law enforcement that plaintiff [Dixon] stole the vehicle." The complaint alleged that the parties negotiated the sale of Albritton's Ford Explorer for $200, which Dixon paid.

On November 15, 2011, Campbell filed an ex parte motion for an order shortening time for service of a notice of deposition on Albritton. In a declaration in support of the ex parte motion, Campbell stated that the complaint had been filed, but he had not yet received the endorsed summons and complaint. He believed the summons and complaint would be ready for pick up from the clerk's office either November 16 or 17, 2011. Campbell stated that he intended to serve Albritton as soon as he received the summons and complaint, and he also wanted to serve the notice of deposition, which Campbell had already scheduled for January 5, 2012.

Campbell further declared that he believed Albritton was in a witness-protection program, and Albritton "ha[d] previously exploited this protection to evade [Campbell's] attempts to lawfully contact him in another legal matter in a separate case." Campbell stated that he believed Albritton would be appearing in court on November 17, 2011, "at a hearing in a criminal matter," and Campbell wanted to serve him the summons, complaint, and notice of deposition at that time. He asked the court to grant his ex parte motion to serve the defendant with the notice of deposition at court on November 17, 2011, or a later date if the criminal hearing were continued.

Campbell did not identify the other "legal matter in a separate case" as a criminal case that involved the same subject matter as the civil complaint and in which his client Dixon was accused of carjacking and Albritton was the alleged victim; nor did he explain

4.

that the witness-protection program was related to that criminal case and Albritton's fear of gang members associated with Dixon.

On the morning of November 17, 2011, in the Metropolitan Division of the Kern County Superior Court, Judge David Lampe granted Campbell's ex parte motion.

According to Albritton, he received a notice of deposition on December 23, 2011, and the deposition took place on January 5, 2012. Albritton believed that the district attorney's office had arranged the deposition and thought nothing of it. At the deposition, however, he felt harassed and intimidated by the process. He was not represented by a lawyer. The deposition lasted about three and a half hours. Albritton's wife missed work in order to drive him to the deposition.

During the deposition, Campbell asked Albritton questions about his background and his past, including whether he had used any other names or had been convicted of any crimes. Campbell did not ask about a transaction in which Albritton allegedly sold his car to Dixon for $200.

The record does not show that Campbell ever served Albritton the summons and complaint for the civil lawsuit. Campbell asked for a fee waiver, and this request was not granted until December 9, 2011, after the date Campbell told the court he was going to serve the summons, complaint, and notice of deposition. On December 14, 2011, the court ordered Dixon and Campbell to show cause why sanctions should not be imposed for failure to serve the complaint and file a proof of service within 60 days of filing the complaint.

On February 24, 2012, the court held a hearing on the order to show cause. An attorney made a special appearance for Campbell and requested dismissal of the lawsuit. The court dismissed *Dixon v. Albritton, supra,* S-1500-CV-275185, without prejudice.

**Sanctions request**

On February 23, 2012, the People filed a request for sanctions against Campbell in the criminal case. The People characterized Dixon's conduct of filing a civil lawsuit and

obtaining a court order permitting Campbell to take the deposition of Albritton as a violation of (1) the victim's state constitutional rights under Marsy's Law and (2) the statutes regulating criminal discovery (Pen. Code, § 1054 et seq.).

In their supporting points and authorities, the People asserted that Campbell did not provide either Albritton or Deputy District Attorney Russell with notice of his ex parte motion for an order shortening time for service of a notice of deposition, and this failure to give notice violated California Rules of Court, rule 3.1203(a).[‡] The People further alleged that, on November 17, 2012 (the day he obtained the ex parte order shortening time), Campbell appeared in the criminal case and requested a continuation of the preliminary hearing, but he did not inform the court or Russell that he intended to take Albritton's deposition.

In a supporting declaration, Albritton stated that he had testified at a preliminary hearing. During questioning, defense counsel blurted out his address. This caused Albritton concern because there were several gang members present in the courtroom. Russell told Albritton after the hearing that all future contact would come through the district attorney's office. For this reason, when Albritton was served papers on December 23, 2011, requiring him to attend a deposition on January 5, 2012, he assumed he was being contacted through the district attorney's office. Albritton saw the words "Kern County Superior Court" across the top and believed this was an official order from the court.

Albritton further declared: "If I had known that I did not have to give a statement to Al Dixon or his attorney Clayton Campbell, or have my deposition taken, I would have refused to have my deposition taken. [¶] … I would like the Kern County District

---

[‡]This rule requires a party seeking an ex parte order to notify all parties no later than 10:00 a.m. the court day before the ex parte appearance, absent a showing of exceptional circumstances. Campbell was required to give notice to Albritton since he was the defendant in the case.

6.

Attorney's office to pursue the enforcement of my constitutional rights under the Victim's Bill of Rights, known as Marsy's [L]aw in any trial or appellate court with jurisdiction over the case."

The People requested that the court order Campbell to provide two deposition transcripts (one for the People and one for Albritton), reimburse Albritton for any expenses related to the civil lawsuit, and self-report to the California State Bar.

Campbell filed a response. He did not dispute the facts as set forth by the People. He did not, for example, assert that he had a good-faith belief in the allegations made in the civil complaint he filed on behalf of Dixon or claim that he served Albritton the summons and complaint. Instead, Campbell argued that the trial court did not have authority to order the sanctions requested. He argued that Code of Civil Procedure section 177.5, which authorizes the court to sanction attorneys for violation of lawful court orders, did not apply because Campbell did not violate any court order. Marsy's Law did not apply because (1) Dixon had a right to access the civil courts during the pendency of the criminal proceedings, and (2) Albritton was not a "victim" under Marsy's Law.

On March 20, 2012, the trial court held a hearing on the People's request for sanctions. Campbell's attorney asked for clarification on "what code section we're proceeding under," and the court stated they were proceeding under Code of Civil Procedure section 128.7.§ The court continued the hearing to allow Campbell an opportunity to address the procedures and applicability of section 128.7.

---

§Code of Civil Procedure section 128.7 requires an attorney to sign every pleading, motion, or other similar paper, certifying, among other things, that the paper is not being presented primarily for an improper purpose and that the factual allegations have evidentiary support. (§ 128.7, subds. (a), (b)(1) & (3).) The statute includes a safe-harbor provision that "requires the party seeking sanctions to serve on the opposing party, without filing or presenting it to the court, a notice of motion specifically describing the sanctionable conduct." (*Li v. Majestic Industry Hills, LLC* (2009) 177 Cal.App.4th 585,

On April 19, 2012, the trial court heard further argument on the sanctions request. The People conceded that Code of Civil Procedure section 128.7 was not a basis for imposing sanctions. The deputy district attorney reiterated that the People were seeking redress under Marsy's Law. He argued that Albritton had an absolute right under Marsy's Law not to give a deposition in the criminal case, and Campbell circumvented that right by filing a civil case for the sole purpose of taking the victim's deposition in the underlying criminal case. He continued, "We believe it would send, not just an unfortunate, but a disastrous, message if this sort of procedural violation was permitted to continue [to] occur."

Campbell's attorney argued there was no remedy or consequences for his conduct. The trial court could not agree. The court explained:

> "I think that the court under C.C.P. 128 has authority to control the court and the proceedings and the attorneys that appear before the court. I don't think that the California Constitution is there just to look at and not have any type of meaning or substance. And I believe the discovery statutes also serve a purpose, and I believe under any of those three sections the Court has authority to impose consequences for somebody who abuses the court process. And I will find that the filing of the civil action was an abuse of the court process, specifically to get around the discovery statutes in the criminal case, and I am going to impose some sanctions."

The court ordered Campbell to purchase a transcript and provide it to Albritton through the district attorney's office, to reimburse Albritton for any expenses incurred because of the civil lawsuit,[**] and to self-report the California State Bar. Campbell's

590-591.) Service of the motion begins a 21-day "'safe harbor'" period during which the offending document may be withdrawn or corrected without sanction. (*Id*. at p. 591.)

[**]The Code of Civil Procedure provides a statutory framework for the recovery of cost items in a civil action. Had Albritton made an appearance in the civil action, he would have become the "'prevailing party'" in that action as a "defendant in whose favor a dismissal [was] entered" (Code Civ. Proc., § 1032, subd. (a)(4)), thus entitling him to an award of costs incurred by him in that action, including "one copy of depositions taken by the party against whom costs are allowed, and travel expenses to attend depositions." (Code Civ. Proc., §§ 1032, subd. (b) & 1033.5, subd. (a)(1), (3).)

attorney again asked the court what statutes the trial court was relying on, and the court responded, "California Constitution, Article [I, section] 28; Penal Code 1054(d), 1054.5(b), and C.C.P. 128."

The court continued: "Having said all of that, I would like to make a record, because I think the California State Bar might look into this case, and that would be to state that in my experience with Mr. Campbell, … he has always been above board and acted with integrity, and I believe this is an aberration. This is not something I would ever expect to see happen again, and I do not believe his reputation as an attorney should be tainted by this one mistake." The deputy district attorney concurred and stated, "In my dealings with Mr. Campbell he has always been ethical, straightforward, and I think this is an absolute aberration .…"

Campbell filed a notice of appeal on May 4, 2012. The court's sanctions order is appealable under Code of Civil Procedure section 904.1, subdivision (b).

## *DISCUSSION*

Campbell contends that (1) his conduct did not violate the statutes and constitutional provision relied upon by the court as the grounds for its sanctions, and (2) even assuming there was a violation, there is no legal basis for the sanctions the court imposed. We address his latter contention first and begin with a brief discussion of the limits on a trial court's inherent authority and the source of its power to sanction attorneys for misconduct.

"It is a general rule that, outside of a contempt proceeding, trial courts lack inherent power to impose a monetary sanction against an attorney for misconduct in court." (*People v. Muhammad* (2003) 108 Cal.App.4th 313, 316 (*Muhammad*).) Rather, "[t]he authority to impose such a sanction must be found in a statute. This has been the declared law in California for at least the past 25 [now 35] years." (*Ibid*., citing *Bauguess v. Paine* (1978) 22 Cal.3d 626 (*Bauguess*).)

9.

In *Bauguess, supra,* 22 Cal.3d at page 639, the California Supreme Court held that trial courts may not order an attorney to pay an opposing party's attorneys' fees as a sanction for misconduct except pursuant to statute. The court reasoned that imposing monetary sanctions against attorneys without express statutory authority would pose serious due process issues:

> "It would be both unnecessary and unwise to permit trial courts to use fee awards as sanctions apart from those situations authorized by statute. If an attorney's conduct is disruptive of court processes or disrespectful of the court itself, there is ample power to punish the misconduct as contempt. Moreover, unlike the power advocated by respondent, a court's inherent power to punish contempt has been tempered by legislative enactment to provide procedural safeguards. [Citations.] Among these safeguards is the opportunity, in cases where the contempt occurs out of the immediate view and presence of the court, to disqualify the judge .… Additionally, the Legislature has limited the penalty for civil contempt to five days in jail and a $500 fine.[††] [Citations.] Absent such safeguards, serious due process problems would result were trial courts to use their inherent power, in lieu of the contempt power, to punish misconduct by awarding attorney's fees to an opposing party or counsel." (*Bauguess*, *supra*, 22 Cal.3d at pp. 637-638.)

In *Muhammad*, *supra*, 108 Cal.App.4th at page 316, the prosecutor improperly exercised jury peremptory challenges in violation of *Wheeler*,[‡‡] leading to a mistrial. The trial court imposed a $1,500 sanction against the prosecutor. The court relied on Code of Civil Procedure section 177.5, which grants courts the power to impose monetary sanctions "for any violation of a lawful court order .…" The appellate court reversed the sanction order because, although she had violated the Constitution, the prosecutor had not violated a court order. (*Muhammad, supra,* at p. 313.) The *Muhammad* court observed that the prosecutor's conduct was "illegal and unprofessional," but without statutory authorization, the trial court could not sanction her.

---

[††]The fine is now limited to $1,000 payable to the court. (Code Civ. Proc., § 1218, subd. (a).)

[‡‡]*People v. Wheeler* (1978) 22 Cal.3d 258.

In *Sheller v. Superior Court* (2008) 158 Cal.App.4th 1697, 1701-1702 (*Sheller*), a Texas attorney appearing *pro hac vice* for plaintiffs in a class action sent a flyer to potential class members that contained a misrepresentation.  The trial court ordered the Texas attorney to reimburse the opposing party for attorneys' fees as a condition of retaining his *pro hac vice* status and formally reprimanded him.  The Court of Appeal reversed, concluding there was no authority for the trial court's order.  (*Id*. at p. 1709.) The trial court could not rely on its inherent authority to order payment of attorneys' fees because "the power to impose such sanctions must be created by the Legislature with appropriate safeguards." (*Id*. at p. 1712.)  The trial court's inherent authority did not extend to attorney disciplinary action because "[t]hat power is exclusively held by the Supreme Court and the State Bar, acting as its administrative arm."  (*Id*. at p. 1710.)

The *Sheller* court noted that trial courts are not "powerless to sanction attorneys for improper conduct or to control the proceedings before them to prevent injustice." (*Sheller*, *supra*, 158 Cal.App.4th at p. 1710.)  For example, "trial courts may conduct contempt proceedings, dismiss sham actions, admonish counsel in open court, strike sham pleadings, and report misconduct to the State Bar. [Citation.]" (*Ibid*.)

It follows from these cases that the sanctions order against Campbell may be upheld only if a statute or constitutional provision granted the trial court the power to impose the sanctions.[§§]  The trial court relied on (1) Marsy's Law, (2) Penal Code

_____

[§§]The People argue that *Bauguess* is distinguishable because the court held only that trial courts may not award attorneys' fees as a sanction, but in this case, the trial court did not award attorneys' fees.  We do not read *Bauguess* and its progeny so narrowly.  These cases recognize that serious due process concerns would arise if courts had unregulated power to sanction attorneys for misconduct.  Trial courts may not award attorneys' fees to an opposing party (*Bauguess*), order a monetary sanction payable to the court (*Muhammed*), or order a reprimand of an attorney (*Sheller*) without statutory authority.  Likewise, a trial court may not require an attorney to reimburse a witness or order an attorney to report him or herself to the State Bar unless a statute or constitutional provision authorizes such a sanction.

sections 1054 and 1054.5, and (3) Code of Civil Procedure section 128. Our task is to determine whether any of these provisions authorized the court to impose sanctions.

## I.     *Marsy's Law*

Article I, section 28, subdivision (b), of the California Constitution enumerates 17 rights held by victims of crime. These include the following rights:

> "(1) To be treated with fairness and respect for his or her privacy and dignity, and to be free from intimidation, harassment, and abuse, throughout the criminal or juvenile justice process. [¶] … [¶]

> "(5) To refuse an interview, deposition, or discovery request by the defendant, the defendant's attorney, or any other person acting on behalf of the defendant, and to set reasonable conditions on the conduct of any such interview to which the victim consents. [¶] … [¶]

> "(17) To be informed of the rights enumerated in paragraphs (1) through (16)."

Marsy's Law provides that the enumerated rights are "personally held and enforceable rights" and may be enforced by the "victim, a lawful representative of the victim, or the prosecuting attorney upon request of the victim" in any trial or appellate court with jurisdiction over the case. (Cal. Const., art. I, § 28, subds. (a)(3) & (c)(1).) As Campbell points out, however, the enforcement provision "does not create any cause of action for compensation or damages against the State, any political subdivision of the State, any officer, employee, or agent of the State or of any of its political subdivisions, or any officer or employee of the court." (*Id*., subd. (c)(2).)

We agree with the trial court and the People that Marsy's Law creates rights that the victim or the prosecuting attorney can enforce in court. In this case, for example, Albritton had the right to refuse to speak to Campbell or any defense investigator about the criminal case and, had Albritton requested Russell's help in the matter, Russell could have sought enforcement of that right before the trial court. Marsy's Law, however, does not specifically provide for sanctions against attorneys as an enforcement mechanism.

12.

The People argue that the lack of an enforcement provision in Marsy's Law did not leave the trial court without authority to sanction Campbell because "California courts have the inherent power to fashion remedies and procedures in order to enforce statutory and constitutional rights. (Code Civ. Proc., § 187.)" We are not persuaded that section 187 gave the trial court the authority to impose sanctions.

Code of Civil Procedure section 187 provides:

"When jurisdiction is, by the Constitution or this Code, or by any other statute, conferred on a Court or judicial officer, all the means necessary to carry it into effect are also given; and in the exercise of this jurisdiction, if the course of proceeding be not specifically pointed out by this Code or the statute, any suitable process or mode of proceeding may be adopted which may appear most conformable to the spirit of this Code."

In *Clark v. Optical Coating Laboratory, Inc.* (2008) 165 Cal.App.4th 150, 155 (*Clark*), a toxic tort lawsuit brought by 32 plaintiffs went to trial against three defendants. Plaintiffs' counsel and witnesses violated a series of in limine and other pretrial orders leading to a mistrial. One of the motions in limine that the plaintiffs violated had "a provision that if [the] plaintiffs violated the order and a mistrial resulted, the court shall 'impose a monetary sanction upon Plaintiffs' counsel in an amount equaling the cost of [the defendant's] attorneys' fees incurred from the date the trial commences to the date of any mistrial.'" (*Id*. at pp. 159-160.) The court ordered plaintiffs' counsel to pay the defendants' attorneys' fees and costs. (*Id*. at pp. 161-162.) The Court of Appeal held that the order awarding attorneys' fees against the plaintiffs' counsel was not within the trial court's inherent power and was not authorized by statute. In reaching this conclusion, the court rejected the argument that Code of Civil Procedure section 187, together with the motion in limine, authorized the trial court's order. The court explained that section 187 "cannot supply the type of statutory authorization required under *Bauguess*. These generic statements of the court's powers to formulate suitable procedures … do not by their own terms authorize any specific form of attorney sanction,

13.

much less impose the type of procedural safeguards that the *Bauguess* court found essential." (*Clark, supra,* at pp. 164-165.)

Similarly, in this case, the trial court could not rely on Code of Civil Procedure section 187 to supply statutory authorization for imposition of attorney sanctions for an alleged violation of Marsy's Law, which itself contains no provision for attorney sanctions. (See also *People v. 6344 Skyway, Paradise, California* (1999) 71 Cal.App.4th 1026, 1035 [where forfeiture statutes did not authorize order requiring claimants to pay storage costs on seized property not ordered forfeited, trial court could not rely on Code Civ. Proc., § 187 and inherent powers to issue such an order against claimants].)

## II.     *Penal Code sections 1054 and 1054.5*

The trial court also cited Penal Code sections 1054, subdivision (d) and 1054.5, subdivision (b), in ordering sanctions against Campbell.

Penal Code section 1054 sets forth general principles governing discovery in criminal proceedings. It provides that the criminal discovery statutes are to be interpreted, among other things, "[t]o protect victims and witnesses from danger, harassment, and undue delay of the proceedings." (Pen. Code, § 1054, subd. (d).[***]) This provision cannot be read to empower trial courts to sanction attorneys for discovery violations. It does not address enforcement of criminal discovery statutes at all.

Penal Code section 1054.5 does address enforcement. It provides, in relevant part:

"(a) No order requiring discovery shall be made in criminal cases except as provided in this chapter. This chapter shall be the only means by which the

_____

[***]In addition, Penal Code section 1054 instructs courts to interpret the criminal discovery statutes to give effect to the following purposes: "(a) To promote the ascertainment of truth in trials by requiring timely pretrial discovery"; "(b) To save court time by requiring that discovery be conducted informally between and among the parties before judicial enforcement is requested"; "(c) To save court time in trial and avoid the necessity for frequent interruptions and postponements"; and "(e) To provide that no discovery shall occur in criminal cases except as provided by this chapter, other express statutory provisions, or as mandated by the Constitution of the United States."

defendant may compel the disclosure or production of information from prosecuting attorneys ….

"(b)  Before a party may seek court enforcement of any of the disclosures required by this chapter, the party shall make an informal request of opposing counsel for the desired materials and information.  If within 15 days the opposing counsel fails to provide the materials and information requested, the party may seek a court order.  Upon a showing that a party has not complied with Section 1054.1 [requiring the prosecutor to disclose information to the defendant] or 1054.3 [requiring defense counsel to disclose information to the prosecution] and upon a showing that the moving party complied with the informal discovery procedure provided in this subdivision, a court may make any order necessary to enforce the provisions of this chapter, including, but not limited to, immediate disclosure, contempt proceedings, delaying or prohibiting the testimony of a witness or the presentation of real evidence, continuance of the matter, or any other lawful order.  Further, the court may advise the jury of any failure or refusal to disclose and of any untimely disclosure."

Although Penal Code section 1054.5, subdivision (b), provides trial courts with procedures for enforcing compliance with the criminal discovery statutes, the trial court could not rely on this statute after Dixon entered his plea.

In *People v. Bowles* (2011) 198 Cal.App.4th 318, 326 (*Bowles*), a criminal case, the prosecution's discovery violation came to light only after the jury reached a verdict. As a remedy for the violation, the trial court granted the defendant a new trial, relying on the language of Penal Code section 1054.5, subdivision (b), that it could enforce the discovery provisions by "'any other lawful order.'"  (*Ibid.*)  The People appealed, arguing that the trial court erred by granting a new trial as a discovery sanction under Penal Code section 1054.5 because sanctions under that statute were not available posttrial.  The reviewing court agreed, explaining:  "Simply put, the purposes of the discovery statutes cannot be furthered where, as here, a jury has already rendered its verdict on the substantive charges against the defendant and the trial court has decided the remaining prior conviction allegations.  Rather, in this situation any violation of a defendant's pretrial right to discovery is appropriately addressed by available posttrial remedies such

15.

as an appeal from the judgment [citation], a motion for new trial [citation], or a petition for habeas corpus [citation]." (*Bowles, supra,* at p. 327.)

Here, there was no jury trial, but the rationale of *Bowles* still applies. After the parties reached a plea agreement and the trial court accepted Dixon's no contest plea to gang participation, the court could no longer rely on Penal Code section 1054.5 to enforce any alleged discovery violation.[†††]

### III. *Code of Civil Procedure section 128*

The trial court also relied on Code of Civil Procedure section 128 for its authority to sanction Campbell.

Code of Civil Procedure section 128 provides that every court "shall have the power" among other things, "[t]o preserve and enforce order in its immediate presence"; "[t]o compel obedience to its judgments, orders, and process, and to the orders of a judge out of court, in an action or proceeding pending therein"; and "[t]o control in furtherance of justice, the conduct of its ministerial officers, and of all other persons in any manner connected with a judicial proceeding before it, in every matter pertaining thereto." (§ 128, subd. (a)(1), (4) & (5).)

Code of Civil Procedure section 128, like section 187, does not grant trial courts authority to sanction attorneys for misconduct. Its "generic statements of the court's powers to … command obedience to its orders do not by their own terms authorize any specific form of attorney sanction .…" (*Clark*, *supra*, 165 Cal.App.4th at pp. 164-165 [neither Code Civ. Proc., § 128 nor § 187, authorized trial court to sanction attorney for violation of pretrial orders]; see also *Hernandez v. Vitamin Shoppe Industries, Inc*. (2009)

---

[†††]We observe that, at the first hearing on the People's request for sanctions, the deputy district attorney apparently agreed with our conclusion. Although the People's request cited the criminal discovery statutes, the deputy district attorney told the court that "it's questionable" whether those provisions applied because Dixon had already been sentenced. He continued, "[Section] 1054 pretty clearly envisions a situation where the remedies are going to be trial remedies, trial provisions, evidentiary."

16.

174 Cal.App.4th 1441, 1452 [reversing order that attorney who improperly communicated with represented class members pay defense counsel and class counsel's attorneys' fees; "[Code Civ. Proc., §] 128 does not provide a court with the power to impose such sanctions."].)

## IV.    *Conclusion*

We have concluded that the trial court lacked authority to order the sanctions it imposed against Campbell. As a result, we need not address Campbell's first argument that his conduct did not violate Marsy's Law or the criminal discovery statutes. If, as suggested by the record, Campbell filed a meritless lawsuit against Albritton in order to take his deposition to prepare a defense for Campbell's criminal defendant client and then intentionally misled Albritton about the purpose of the deposition by failing to serve him the summons and complaint, we do not condone such conduct. Although we have found that the trial court was not authorized to sanction Campbell in the manner that it did, we do not limit other remedies which may be pursued against him for such conduct.

### *DISPOSITION*

The sanctions order against Campbell is reversed. The parties are to bear their own costs on appeal.

_____

Oakley, J.[‡‡‡]

WE CONCUR:


_____

Gomes, Acting P.J.


_____

Peña, J.

_____

[‡‡‡]Judge of the Superior Court of Madera County, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

17.