Filed 3/14/13  P. v. Castleman CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>          Plaintiff and Respondent,<br><br>v.<br><br>RICHARD D. CASTLEMAN,<br><br>          Defendant and Appellant. | A131730<br><br>(Humboldt County<br>Super. Ct. No. CR1003911) |

Defendant was convicted of sale or transportation of heroin, possession of methamphetamine, and providing false information to a police officer after he was found to be storing a significant quantity of narcotics in his pants and jacket.  As a result of three prior convictions for robbery, defendant was sentenced under the "Three Strikes" law (Pen. Code, § 667, subds. (b)–(i)) to a term of 25 years to life imprisonment.  Defendant contends the trial court erred in denying his requests to represent himself at trial and to appoint substitute counsel and in granting his request for a mistrial.  He also contends his sentence constituted cruel and unusual punishment and asserts the court should have stricken his prior robbery convictions.  We affirm.

## I.  BACKGROUND

Defendant was charged in an amended information, filed December 15, 2010, with possession for sale of heroin (Health & Saf. Code, § 11351), sale or transportation of heroin (Health & Saf. Code, § 11352, subd. (a)), possession of methamphetamine (Health & Saf. Code, § 11377, subd. (a)), and providing false information to a police officer (Pen. Code, § 148.9, subd. (a)).  Each of the drug-related counts also alleged three prior serious

felony convictions (Pen. Code, § 667, subds. (b)–(i)) and five prior prison terms (Pen. Code, § 667.5, subd. (b)). All three prior serious felony convictions were for robbery (Pen. Code, § 211; Pen. Code, former § 213.5; see *People v. Colbert* (1988) 198 Cal.App.3d 924, 926 & fn. 1), one dating from 1986 and the two others from 1992.

The drugs were found on defendant's person during searches conducted after he was detained on suspicion of a probation violation and placed in the back seat of a police car. Defendant's defense was based on the testimony of his girlfriend, who claimed she had placed the drugs on him when she was permitted by police to embrace him in the police car.

When the parties first appeared for trial on December 13, 2010, defense counsel made an oral motion for a continuance, asking for additional time to locate a witness who might have observed the girlfriend's planting of evidence. The court denied the motion for lack of diligence in pursuing the witness.

Soon after, defendant moved for leave to discharge his appointed attorney and represent himself at trial. Defendant noted he had already made three unsuccessful motions to replace his appointed counsel (*People v. Marsden* (1970) 2 Cal.3d 118 (*Marsden*)) and told the court he believed he had a better chance of success if able to conduct the defense in his own way.[1] The prosecution opposed the motion as untimely, having been made on the day set for trial, and defendant conceded he was not prepared to proceed to trial if his request was granted. Expressing the belief defendant's motion was made as a response to the denial of his most recent *Marsden* motion, the court told defendant it was "not inclined" to grant a continuance. The court asked defendant for his preference, assuming a continuance was unavailable. Under those circumstances, defendant responded, he would prefer to continue with new counsel and requested another *Marsden* hearing.

---

[1] The most recent *Marsden* motion had been denied after a hearing four days earlier.

The court conducted the fourth *Marsden* hearing the same day. Explaining his dissatisfaction with appointed counsel, defendant told the court he wanted to call as witnesses three persons who had been present at the time of his arrest. Defendant insisted all three witnesses were "personal snitches" of the arresting police officer and all three were represented by the office of conflict counsel, the same office that employed his attorney. Defendant believed those representations and the representation of his girlfriend created a conflict of interest for counsel. Defendant also believed the warrant on which he had been detained should be challenged because it was based on false information.

Defense counsel told the court he was employed as a public defender in the office of conflict counsel and had been practicing as a criminal defense attorney in Humboldt County for six years. Addressing the three potential witnesses, counsel explained one of them was the owner of the vehicle in which defendant was sitting at the time of his detention. Once the vehicle was determined not to have been stolen, that person had been cleared by police of any further involvement in the case. The other two were men who had been present at the scene of the arrest when police first arrived but left prior to defendant's detention. Counsel believed, based on the police report, none of the three could give relevant testimony and noted defendant had never before mentioned to him the two witnesses who left the scene prior to the detention. Further, counsel had no information to suggest the witnesses were informants for the police. Counsel acknowledged representing the driver, but said he was unaware of any representation by his office of the other two persons. He believed there was no conflict with respect to defendant's girlfriend because her case had been closed. Regarding a challenge to the warrant, counsel said it would not invalidate the detention even if successful, since defendant was known to the arresting officer as a parolee who could be searched without probable cause.

The court denied the motion, telling defendant, "[J]ust because an attorney doesn't do what you say doesn't mean that they aren't prepared to represent you fully and

3

completely in regard to the case. . . . [¶] . . . [¶] . . . [Defense counsel] is prepared, looking out for your best interests, despite your concerns otherwise."

On the day designated for commencement of jury selection, an unfamiliar attorney appeared with defense counsel, telling the court, "I've been asked by [defendant] to substitute in today." When the court learned the attorney was not prepared to proceed, having not reviewed any trial materials, it pressed her for a commitment to see the case through, saying, "I'm not saying I'm going to grant a continuance based on that, but I need your personal representations on the record that you are—have been retained for trial and that you would not be asking to be relieved as counsel because of lack of compensation as it relates to going to trial." When the attorney conceded she had not yet been paid, the court responded, "I guess what I would tell you is that if the Court allows you in as counsel today and continues the matter, the Court is stating now that you will most likely not be able to ask the Court to be relieved if you are not fully compensated for that." After discussing the matter privately with defendant, the new attorney declined the representation.

Defendant then asked the court about its decision not to grant him a continuance to prepare to represent himself, implicitly contrasting his situation with that of the new attorney. The court responded, "I don't think your request to be self-represented was made based on the statutory requirements that are there and that it was simply a result of your dissatisfaction with counsel." The court explained it was willing to give more time to new counsel because she might have been able to provide defendant with effective representation.

When, a short time later, defendant renewed his request for leave to represent himself and a continuance to prepare, the court clarified its ruling. It noted defendant was entitled to represent himself as a matter of constitutional right, but only if "the request [is made] within a reasonable time before trial. [¶] . . . [T]he defendant's technical legal knowledge is irrelevant to the Court's assessment of the defendant's knowingly exercising a right to self-representation." The court said its denial was based on defendant's failure to make a timely request.

4

On the morning following jury selection, December 22, defense counsel informed the court he had just been provided with seven hours of recordings of jailhouse visits between defendant and his girlfriend, who was to be the primary defense witness. While not contending the late disclosure constituted misconduct by the prosecution, defense counsel told the court he would require a continuance to review the materials or, in the alternative, exclusion of the tapes or a mistrial. Counsel estimated he would need 10 court days to review the materials fully and discuss them with defendant. The prosecutor told the court he had a "prepaid vacation" scheduled for the second week of January.

In ruling on the request, the court recognized it might not be possible to resume trial at the end of the continuance, depending on the content of the tapes. Defense counsel confirmed he could not "assure" the court that trial could resume after a 10-day break. The court granted a continuance until December 28, intending on that day to entertain a further request for time, if necessary.

Upon hearing the court's ruling, defense counsel, concerned he would not be prepared to resume trial that quickly, requested a mistrial and offered defendant's waiver of double jeopardy rights. The court confirmed the waiver with defendant. Noting the late disclosure could be unduly prejudicial to defendant, the court granted the motion. A new trial was scheduled for slightly over a month later, on January 24, 2011.

Jury selection ultimately began on February 14. Defendant was convicted on three of the counts, transportation, simple possession, and providing false information. A mistrial was declared as to the charge of possession for sale after the jury was unable to agree on a verdict. At a later court trial, the enhancement allegations were found true.

At sentencing, the trial court granted defendant's motion to strike the prior prison term allegations as to all counts, but it declined to strike the prior serious felony conviction allegations as to the transportation count. Accordingly, defendant was sentenced on that count to a term of 25 years to life. In explaining its decision not to strike the prior strike convictions, the court noted that although the convictions occurred "a long time ago" in 1986 and 1992, defendant had three convictions in those two years, with another felony conviction between them. In addition, he had other convictions since

5

1992, including several felony and misdemeanor convictions in 1998. As a result, the court concluded, "[T]here has been very little time that [defendant] has not been committing offenses, except for the time that he's in prison, although he does have the escape conviction even related to that." His performance on parole had been consistently poor. The present offense involved "a large amount" of heroin that was individually packaged, and defendant exhibited no acceptance of responsibility for his criminal conduct. Given his life circumstances, the court concluded, his "prospects are poor for a stable, law-abiding life."

## II. DISCUSSION

### A. *Defendant's* **Faretta** *Motion*

Defendant first contends the trial court abused its discretion in denying his motion for self-representation, generally referred to as a *Faretta* motion. (*Faretta v. California* (1975) 422 U.S. 806 (*Faretta*).)

"A trial court must grant a defendant's request for self-representation if the defendant unequivocally asserts that right within a reasonable time prior to the commencement of trial, and makes his request voluntarily, knowingly, and intelligently. [Citations.] As the high court has stated, however, '*Faretta* itself and later cases have made clear that the right of self-representation is not absolute.' [Citations.] Thus, a *Faretta* motion may be denied if the defendant is not competent to represent himself [citation], is disruptive in the courtroom or engages in misconduct outside the courtroom that 'seriously threatens the core integrity of the trial.' [Citations.] [¶] Likewise, we have long held that a self-representation motion may be denied if untimely. [Citation.] . . . '[O]nce a defendant has chosen to proceed to trial represented by counsel,' a defendant's motion for self-representation is 'addressed to the sound discretion of the court.' " (*People v. Lynch* (2010) 50 Cal.4th 693, 721–722, fn. omitted, disapproved on other grounds in *People v. McKinnon* (2011) 52 Cal.4th 610, 637–638, 643.)

This case is controlled by *People v. Horton* (1995) 11 Cal.4th 1068 (*Horton*), the circumstances of which are indistinguishable from those presented here. In *Horton*, the defendant made a *Faretta* motion on the day of trial, immediately after his *Marsden*

6

motion was denied. The trial court concluded defendant was attempting to obstruct the prosecution and delay trial, and it denied the motion as untimely. (*Horton,* at p. 1110.) The Supreme Court affirmed, holding, "In order to invoke the constitutionally mandated unconditional right of self-representation, a defendant must assert that right within a reasonable time prior to trial. The latter requirement serves to prevent a defendant from misusing the motion to delay unjustifiably the trial or to obstruct the orderly administration of justice. [Citation.] If the motion is untimely—i.e., not asserted within a reasonable time prior to trial—the defendant has the burden of justifying the delay. [Citation.] '[A] defendant should not be permitted to wait until the day preceding trial before he moves to represent himself and requests a continuance in order to prepare for trial without some showing of reasonable cause for the lateness of the request. In such a case the motion for self-representation is addressed to the sound discretion of the trial court . . . .' [Citation.] [¶] The record amply supports the trial court's action in denying defendant's untimely request after finding a lack of any justification for the delay." (*Id.* at pp. 1110–1111.)

Defendant similarly failed to justify his delay in making the *Faretta* motion. No explanation for the delay was offered, and the circumstances tended to confirm the trial court's intuition that defendant made the motion to unburden himself of appointed counsel rather than from a sincere desire to serve as his own attorney. While, as defendant points out, there was no finding he intended to disrupt or delay the proceedings, as in *Horton,* the Supreme Court did not rely on the finding of dilatory intent to affirm that case. Granting the request would have the effect of delay, and, in the absence of any justification, this was sufficient under *Horton*. Accordingly, the trial court properly exercised its discretion to deny the *Faretta* motion as untimely.

Defendant first contends his motion would have been considered timely under the interpretation of *Faretta* applied in certain federal appellate courts. In the event of any discrepancy in the application of the United States Supreme Court's precedents regarding self-representation, however, we are bound to follow our own high court's rulings. As

7

discussed above, the trial court's ruling was a proper exercise of discretion under those rulings.

Citing the trial court's purported willingness to grant additional time to permit defendant to retain a new lawyer, he next contends allowing him time to prepare his own representation would not have unduly disrupted the proceedings. Contrary to defendant's contention, the trial court did not offer to grant a continuance to accommodate new counsel. The court merely asked whether the attorney would commit firmly to representation *assuming a continuance would be granted.* Yet even if the court had been willing to tolerate a trial delay to accommodate defendant's choice of counsel, that willingness would not retrospectively justify defendant's own delay in asserting his *Faretta* rights. Further, granting defendant's motion not only would have required delaying the scheduled trial for a longer period than would be necessary for experienced counsel, but also would have risked causing additional delay if defendant found himself unequal to the task and requested reappointment of counsel. The longer continuance and the potential for disruption in the event defendant requested reappointment of counsel justified different treatment of defendant's request to represent himself and any request for time by newly retained counsel.

Defendant also argues the trial court based its ruling on improper considerations, such as defendant's lack of legal experience. On the contrary, while the trial court initially expressed concern about defendant's lack of training, it ultimately denied the motion on grounds of untimeliness, recognizing "[t]he defendant's technical legal knowledge is irrelevant to the Court's assessment of the defendant's knowingly exercising a right to self-representation." The court also cited its suspicion defendant's motion was made in response to the denial of his *Marsden* motion rather than a genuine desire to serve as his own attorney. This, too, would have been a proper reason to deny the motion because the request for self-representation was "not unequivocal." (*People v. Scott* (2001) 91 Cal.App.4th 1197, 1205–1206.) Even if the trial court's reasoning had been flawed, however, " ' "we review the ruling, not the court's reasoning and, if the

8

ruling was correct on any ground, we affirm." ' " (*People v. Rogers* (2009) 46 Cal.4th 1136, 1162, fn. 14.)

Finally, defendant argues the court abused its discretion in "conditioning [defendant's] right to represent himself on the court's granting of a continuance." The argument badly misstates the record. In fact, the court initially informed defendant it would not be inclined to grant a continuance if he insisted on assuming his own defense. Upon hearing he would not be granted more time, defendant withdrew his request. Later, when defendant reasserted his desire to represent himself, the court denied the request as untimely. At no point did the court condition the grant of defendant's *Faretta* motion on a continuance.[2]

## B. *Defendant's* **Marsden** *Motion*

Defendant next contends the trial court abused its discretion in denying his fourth *Marsden* motion, discussed above.

" 'When a defendant seeks substitution of appointed counsel pursuant to [*Marsden*], "the trial court must permit the defendant to explain the basis of his contention and to relate specific instances of inadequate performance. A defendant is entitled to relief if the record clearly shows that the appointed counsel is not providing adequate representation or that defendant and counsel have become embroiled in such an irreconcilable conflict that ineffective representation is likely to result." ' [Citation.] 'A trial court should grant a defendant's *Marsden* motion only when the defendant has made "a substantial showing that failure to order substitution is likely to result in constitutionally inadequate representation." ' [Citation.] [¶] 'We review the denial of a *Marsden* motion for abuse of discretion.' [Citation.] 'Denial is not an abuse of discretion "unless the defendant has shown that a failure to replace counsel would

---

[2] The case cited by defendant as authority for his argument, *People v. Sherrod* (1997) 59 Cal.App.4th 1168, merely holds that, if a *Faretta* motion is granted on the day set for trial, the defendant must be given a fair opportunity to prepare for trial. (*Sherrod,* at p. 1174.) It does not hold that an untimely motion must be granted when a continuance would be necessary to permit such preparation.

9

substantially impair the defendant's right to assistance of counsel." ' " (*People v. Streeter* (2012) 54 Cal.4th 205, 230.)

The presentations at the *Marsden* hearing provided no indication either that defense counsel's representation was inadequate or that defendant and counsel had an irreconcilable conflict. Defendant's primary concern at the hearing was his attorney did not intend to call as witnesses certain persons defendant believed to have relevant and exculpatory information. It has long been held that a difference over trial tactics does not constitute an irreconcilable conflict. (*People v. Myles* (2012) 53 Cal.4th 1181, 1207.) While defendant argues the record demonstrates "such an extensive disagreement over procedural and substantive tactics as signaled a virtual standstill in any 'assistance of counsel,' " the contrary is true. The record demonstrates counsel was well aware of defendant's views, had taken them seriously enough to investigate them thoroughly, and had concluded they were unsupported. This is the very opposite of a broken relationship.

Defendant also contends the hearing demonstrated defendant's "trust and relationship with appointed counsel had irremediably broken down." Lack of trust by a defendant in his attorney does not alone justify a substitution of appointed counsel. " 'If a defendant's claimed lack of trust in, or inability to get along with, an appointed attorney were sufficient to compel appointment of substitute counsel, defendants effectively would have a veto power over any appointment, and by a process of elimination could obtain appointment of their preferred attorneys, which is certainly not the law.' " (*People v. Myles, supra,* 53 Cal.4th at p. 1207.)

In any event, defendant has not demonstrated the failure to appoint substitute counsel "substantially impair[ed]" his Sixth Amendment right to counsel. (*People v. Streeter, supra,* 54 Cal.4th at p. 230.) Defendant cites no impairment at all of counsel's performance at trial as a result of the purported conflict. He argues only that he might have accepted a favorable plea offer if he had been given replacement counsel, but there is nothing in the record to support such speculation.

**C.** *The Mistrial*

Defendant argues the trial court erred in "declaring a mistrial in order to effectuate a longer continuance than it was willing to grant." Although couched as a challenge to the trial court's grant of his motion for a mistrial, defendant's argument is, at best, a challenge to the trial court's refusal to grant his attorney's request for a 10-court-day continuance.

" ' " 'The granting or denial of a motion for continuance in the midst of a trial traditionally rests within the sound discretion of the trial judge who must consider not only the benefit which the moving party anticipates but also the likelihood that such benefit will result, the burden on other witnesses, jurors and the court and, above all, whether substantial justice will be accomplished or defeated by a granting of the motion.' " [Citation.] In the absence of a showing of an abuse of discretion and prejudice to the defendant, a denial of a motion for a continuance does not require reversal of a conviction. [Citation.]' [Citations.] Defendant bears the burden of establishing that denial of a continuance request was an abuse of discretion." (*People v. Panah* (2005) 35 Cal.4th 395, 423.)

We find no abuse of discretion in the court's decision to grant a tentative continuance of six calendar days, rather than the full 10-court-day continuance requested by defense counsel. Importantly, the court did not suggest the six-day continuance was final; its plan was to hold a further conference at the expiration of the continuance to determine the appropriate steps once defense counsel had reviewed the tapes. The court expressly mentioned the possibility of entertaining a request for a further continuance at that time.

There is nothing unreasonable about this ruling. Defense counsel was faced with reviewing seven hours of audio tape. That was, literally, a day's work. If the results of the review dictated a substantial change in trial strategy for the defense, requiring further time, counsel was given the option of requesting further time when the parties reconvened. The trial court's continuance of six calendar days was not dramatically different from counsel's request for 10 court days, and any hardship was mitigated by the

11

court's expressed willingness to consider a further continuance if justified. There is no reason to believe, as defendant contends, the trial court imposed the shorter continuance for the purpose of forcing defense counsel to request a mistrial.[3]

As noted above, defendant contends the trial court erred in granting the motion for a mistrial, but we conclude he waived the right to challenge this ruling by expressly consenting to the court's grant of the motion. The general rule is that a defendant waives any double jeopardy claim by consenting to a motion for mistrial. (E.g., *People v. Batts* (2003) 30 Cal.4th 660, 679–680.) By the same reasoning, the consent waives any claim for other relief resulting from the grant of the motion.

In addition, defendant cites no prejudice from the grant of a mistrial. At less than two months, the delay in his trial was brief, and he does not contend there was any adverse impact on his trial as a result. While defendant claims a denial of his " 'valued right to have his trial completed by a particular tribunal' " (*Renico v. Lett* (2010) 559 U.S. 766, ___ [130 S.Ct. 1855, 1867]), this particular tribunal had not even heard opening arguments, let alone evidence. The present situation is simply not comparable to the typical double jeopardy case, in which a mistrial is declared in the midst, or after the completion, of testimony. In any event, the right he cites is protected by the prohibition against double jeopardy. (*Ibid.*) Because defendant makes no claim of a violation of his right against double jeopardy, this right could not have been wrongfully denied.[4]

---

[3] In the case on which defendant primarily relies, *People v. Gatlin* (1989) 209 Cal.App.3d 31, the court adopted a virtually identical approach to the late disclosure of discovery materials, allowing counsel to review the materials over a weekend. The trial court thereafter denied a continuance and motion for mistrial, rulings that were affirmed on appeal. (*Id.* at pp. 38–41.) It therefore provides no support for his argument.

[4] Because there was no prejudice, defendant cannot prevail on a claim of ineffective assistance of counsel based on the motion for a mistrial. (*People v. Hernandez* (2012) 53 Cal.4th 1095, 1104–1105.)

**D. *Refusal to Strike Defendant's Prior Convictions***

Defendant contends the trial court abused its discretion in denying his *Romero* motion to strike his prior serious felony convictions. (*People v. Superior Court (Romero)* (1996) 13 Cal.4th 497 (*Romero*).)

The narrow range of our task in reviewing the denial of a *Romero* motion was defined in *People v. Carmony* (2004) 33 Cal.4th 367: " '[T]he Three Strikes initiative, as well as the legislative act embodying its terms, was intended to restrict courts' discretion in sentencing repeat offenders.' [Citation.] To achieve this end, 'the Three Strikes law does not offer a discretionary sentencing choice, as do other sentencing laws, but establishes a sentencing requirement to be applied in every case where the defendant has at least one qualifying strike, unless the sentencing court "conclud[es] that an exception to the scheme should be made because, for articulable reasons which can withstand scrutiny for abuse, this defendant should be treated as though he actually fell outside the Three Strikes scheme." ' [Citation.]

"Consistent with the language of and the legislative intent behind the three strikes law, we have established stringent standards that sentencing courts must follow in order to find such an exception. '[I]n ruling whether to strike or vacate a prior serious and/or violent felony conviction allegation or finding under the Three Strikes law, on its own motion, "in furtherance of justice" pursuant to Penal Code section 1385(a), or in reviewing such a ruling, the court in question must consider whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies.' [Citation.]

"Thus, the three strikes law not only establishes a sentencing norm, it carefully circumscribes the trial court's power to depart from this norm and requires the court to explicitly justify its decision to do so. In doing so, the law creates a strong presumption that any sentence that conforms to these sentencing norms is both rational and proper.

13

"In light of this presumption, a trial court will only abuse its discretion in failing to strike a prior felony conviction allegation in limited circumstances. For example, an abuse of discretion occurs where the trial court was not 'aware of its discretion' to dismiss [citation], or where the court considered impermissible factors in declining to dismiss [citation]. Moreover, 'the sentencing norms [established by the Three Strikes law may, as a matter of law,] produce[] an "arbitrary, capricious or patently absurd" result' under the specific facts of a particular case. [Citation.]

"But '[i]t is not enough to show that reasonable people might disagree about whether to strike one or more' prior conviction allegations. [Citation.] Where the record is silent [citation], or '[w]here the record demonstrates that the trial court balanced the relevant facts and reached an impartial decision in conformity with the spirit of the law, we shall affirm the trial court's ruling, even if we might have ruled differently in the first instance' [citation]. Because the circumstances must be 'extraordinary . . . by which a career criminal can be deemed to fall outside the spirit of the very scheme within which he squarely falls once he commits a strike as part of a long and continuous criminal record, the continuation of which the law was meant to attack' [citation], the circumstances where no reasonable people could disagree that the criminal falls outside the spirit of the three strikes scheme must be even more extraordinary. Of course, in such an extraordinary case—where the relevant factors described in [*People v. Williams* (1998) 17 Cal.4th 148 (*Williams*)], manifestly support the striking of a prior conviction and no reasonable minds could differ—the failure to strike would constitute an abuse of discretion." (*People v. Carmony, supra,* 33 Cal.4th at pp. 377–378.)

This is not an extraordinary case. The trial court was clearly aware of the scope of its discretion and the factors guiding that discretion. The court found, in essence, that defendant's prior serious felony convictions, his other convictions, and "the particulars of his background, character, and prospects" (*Williams, supra,* 17 Cal.4th at p. 161), suggest he is the type of repeat offender intended to be covered by the Three Strikes law. Defendant argues his convictions should have been stricken because they occurred many years ago, but the nature and timing of the prior strikes is only one factor to be considered

14

under *Romero*.  As the trial court noted, defendant not only suffered the strike convictions but has spent substantial time in prison in the interim years as a result of other offenses, consistently failing to succeed on parole.  There is no basis for reversing the court's decision not to strike the prior serious felony convictions.

## E. *Cruel and Unusual Punishment*

Defendant contends his 25-year-to-life sentence violates the Eighth Amendment proscription against cruel and unusual punishment.  Defendant waived this challenge when he failed to raise it in the trial court.  (*People v. Norman* (2003) 109 Cal.App.4th 221, 229.)  Even if there were no waiver, however, we would find no merit in the claim.

"The Eighth Amendment prohibits imposition of a sentence that is 'grossly disproportionate' to the severity of the crime.  [Citations.]  In a noncapital case, however, successful proportionality challenges are ' "exceedingly rare." '  [Citation.]  In the rare case where gross disproportionality can be inferred from (1) the gravity of the offense and harshness of the penalty, the court will consider (2) sentences imposed for other offenses in the same jurisdiction and (3) sentences imposed for commission of the same crimes in other jurisdictions.  [Citation.]  '[I]t is only in the rare case where a comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality that the second and third criteria come into play.' "  (*People v. Haller* (2009) 174 Cal.App.4th 1080, 1087–1088.)

Eighth Amendment challenges to Three Strikes sentences have been upheld in nearly all cases.  In the leading case of *Ewing v. California* (2003) 538 U.S. 11, 20–21, for example, the Supreme Court upheld against constitutional challenge an indeterminate life sentence for a theft of golf clubs, supported by prior serious felony convictions for robbery and burglary.  Our own Supreme Court's most recent consideration of the issue, *In re Coley* (2012) 55 Cal.4th 524, concerned a triggering conviction for the failure to register as sex offender.  Holding that "in determining the gravity of petitioner's conduct in evaluating an Eighth Amendment challenge to a sentence imposed under a recidivist sentencing statute, we must consider not only petitioner's triggering offense but also the nature and extent of petitioner's criminal history," the court affirmed an indeterminate

15

life sentence for a defendant who had refused to register and whose prior offenses were "particularly heinous." (*Id.* at p. 562.) The court suggested a life sentence for failure to register under the Three Strikes law is unconstitutional only if the failure was "a negligent oversight" in the course of a pattern of compliance. (*Id.* at p. 551.)

Measured against these precedents, there is no basis for defendant's claim of cruel and unusual punishment. His triggering offense, the transportation of commercial quantities of heroin, was serious. It was in no sense a "negligent oversight." (*In re Coley, supra,* 55 Cal.4th at p. 551.) His past conduct involved three convictions for robbery and a series of lesser crimes, such as drug possession, jail escape, and burglary, which occurred periodically throughout his life. While the sentence imposed might be disproportionate if the triggering offense were considered in isolation, in reviewing a conviction under the Three Strikes law we view the conviction in the context of the defendant's past conduct. From that perspective, we find no gross disproportionality. (See *People v. Mantanez* (2002) 98 Cal.App.4th 354, 366–367 [no Eighth Amendment violation when Three Strikes sentence imposed for possession of heroin and receiving stolen property when defendant had long history of burglary and narcotics offenses].)

**F.  *Proposition 36***

In a letter brief filed November 9, 2012, defendant requested his sentence be vacated and the matter remanded to the trial court for resentencing pursuant to recently approved Proposition 36, the Three Strikes Reform Act of 2012 (the Act). While not necessarily disputing defendant's entitlement to relief under the Act, the Attorney General contends defendant is required to follow the procedure set out in the Act for existing prison inmates. We agree and decline to vacate his sentence.

As explained in *People v. Yearwood* (2013) 213 Cal.App.4th 161 (*Yearwood*), "[t]he Act changes the requirements for sentencing a third strike offender to an indeterminate term of 25 years to life imprisonment. Under the original version of the three strikes law a recidivist with two or more prior strikes who is convicted of any new felony is subject to an indeterminate life sentence. The Act diluted the three strikes law by reserving the life sentence for cases where the current crime is a serious or violent

16

felony or the prosecution has pled and proved an enumerated disqualifying factor. In all other cases, the recidivist will be sentenced as a second strike offender. [Citations.] The Act also created a postconviction release proceeding whereby a prisoner who is serving an indeterminate life sentence imposed pursuant to the three strikes law for a crime that is not a serious or violent felony and who is not disqualified, may have his or her sentence recalled and be sentenced as a second strike offender unless the court determines that resentencing would pose an unreasonable risk of danger to public safety." (*Id.* at pp. 167–168.)

Like defendant here, the defendant in *Yearwood* was convicted and sentenced to an indeterminate life sentence under the Three Strikes law prior to the approval of the Act. On direct appeal from his conviction, he requested the court vacate his sentence and remand for resentencing under the Act. (*Yearwood, supra,* 213 Cal.App.4th at p. 168.) In declining and requiring the defendant to pursue a petition for recall of sentence in the trial court under new section 1170.126, *Yearwood* explained the issue turns on whether the Act "appl[ies] retroactively to prisoners who were sentenced prior to the Act's effective date but whose judgments were not final as of that date." (*Yearwood,* at p. 168.) Following an extensive analysis under *In re Estrada* (1965) 63 Cal.2d 740, *Yearwood* concluded the Act was not intended to apply retroactively to such persons. (*Yearwood,* at pp. 171–178.) As a result, these defendants must seek relief through a petition for recall, the specified postconviction remedy. We find no basis for disagreeing with *Yearwood*'s analysis or its result and, solely on this basis, decline to vacate defendant's sentence under the Act. We express no opinion on the proper disposition of any petition for recall he might file in the trial court pursuant to section 1170.126.

## III. DISPOSITION

The judgment of the trial court is affirmed.

_____
Margulies, J.

We concur:

_____
Marchiano, P.J.

_____
Banke, J.