Filed 9/26/16  P. v. Linden CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>STEFAN MATS LINDEN,<br><br>    Defendant and Appellant. | B264263<br><br>(Los Angeles County<br>Super. Ct. No. TA135008) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Pat Connolly, Judge.  Reversed in part, affirmed in part and remanded with directions.

Sally Patrone Brajevich, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Victoria B. Wilson and Carl N. Henry, Deputy Attorneys General, for Plaintiff and Respondent.

_____

## INTRODUCTION

Stefan Mats Linden appeals from a judgment and sentence, following his convictions for attempted involuntary manslaughter and possession of two dirks or daggers. After appellant filed his opening brief, our Supreme Court ruled that a pocket knife which is "not fixed or immobile and could be closed simply by applying pressure to the back of the blade" does not constitute a dirk or dagger within the meaning of Penal Code sections 16470 and 21310.[1] (See *People v. Castillolopez* (2016) 63 Cal.4th 322, 333 (*Castillolopez*).) Respondent concedes that appellant's two convictions for possession of a dirk or dagger must be reversed, as no evidence was presented that the switchblade knives here were "fixed or immobile." Accordingly, we reverse those convictions.

As to the remaining conviction for attempted involuntary manslaughter, appellant contends it must be reversed, as there was insufficient evidence to support the jury's verdict. He further contends he was denied a fair trial due to judicial misconduct, prosecutorial misconduct, and the trial court's failure to sanitize a prior conviction for committing a lewd act on a child. Finally, he contends his admission to prior felony convictions was not voluntary and intelligent. For the reasons set forth below, we reject those contentions. Accordingly, we affirm in part, reverse in part, and remand for further proceedings.

## STATEMENT OF THE CASE

In an information filed November 12, 2014, the Los Angeles County district attorney charged appellant with five counts arising out of two separate instances. In count 1, appellant was charged with the attempted premeditated murder of Jose Blanco on September 8, 2014 (§§ 664, 187, subd. (a)). The remaining four counts

---

[1]     All further statutory citations are to the Penal Code, unless otherwise stated.

arose from an incident involving appellant and Joseph Brown on July 8, 2014. In connection with that incident, appellant was charged with assault with a deadly weapon, a knife (§ 245, subd. (a)(1); count 2), carrying a dirk or dagger (§ 21310; counts 3 & 4), and exhibiting a deadly weapon (§ 417, subd. (a)(1); count 5). As to count 1 involving Blanco, it was alleged that appellant personally used a deadly weapon, viz., a clay brick (§ 12022, subd. (b)(1)), and that he personally inflicted great bodily injury (GBI) (§ 12022.7, subd. (a)). As to counts 1 through 4, it was further alleged that appellant had served six prior prison terms (in Florida) (§ 667.5, subd. (b)), had suffered a "strike" within the meaning of the "Three Strikes" law (§§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d)), and had suffered a prior serious (Florida) felony conviction (§ 667, subd. (a)(1)).

After the prosecutor was unable to procure Brown to testify at trial, counts 2 and 5 were dismissed. A jury found appellant guilty of attempted voluntary manslaughter -- a lesser included crime of attempted premeditated murder (count 1) -- and guilty of possession of two dirks or daggers (counts 2 & 3). It also found true the deadly weapon and GBI enhancements relating to count 1.

Appellant admitted the prior conviction allegations. The trial court sentenced appellant to the upper term of five years, six months on count 1, doubled for the prior strike, plus four years for the weapon and GBI enhancements, five years for the section 667, subdivision (a)(1) prior, and three years total for the four section 667.5, subdivision (b) priors. It imposed a consecutive sentence of one year, four months on count 3, and a concurrent two-year sentence on count 4.

Appellant filed a timely notice of appeal.

## STATEMENT OF THE FACTS

A.   *The Prosecution Case*

1.   *July 8, 2014 Incident Involving Brown*

Eric Hernandez, a security guard for a county government building, testified he received a call from another guard, who was buying lunch at a nearby food truck.  The guard reported a verbal disturbance and stated that the suspect had a knife.  When Hernandez arrived at the scene, he contacted Brown, who directed him to appellant.  Hernandez searched appellant and seized two switchblade knives from appellant's pants pockets.

2.   *September 8, 2014 Incident Involving Blanco*

Victor Diaz, a vehicle inspector who worked across from a homeless encampment, testified he encountered appellant twice on September 8.  First, when he came to work that morning, appellant told him, "You can't pass until you give me some money."  Diaz gave appellant some change.

At 11:00 a.m., Diaz went outside for his lunch break.  While eating in his vehicle, he observed appellant pick up a clay brick from the corner of the homeless encampment and walk back into the camp.  About 45 minutes later, Diaz left his vehicle to get some fresh air.  An African American male approached Diaz, informed him that someone was being assaulted, and directed his attention to an area in the camp.  Diaz looked in that direction and observed appellant holding a clay brick and bringing it down on a person who was lying motionless on the ground with his face in the dirt.  Appellant struck the person -- later identified as Blanco -- two times on the back of the head.  Diaz ran toward appellant, yelling, "Hey, what . . . are you doing?"  Appellant did not respond and struck Blanco again.  Blanco did not move in response to being hit.

When Diaz reached appellant, he grabbed the brick from appellant's hand and tossed it into the nearby riverbed. He again asked appellant, "What are you doing?" Appellant answered, "Nobody talks to me that way." Diaz told appellant he would come back, and left to call 911. While on the phone with the 911 operator, Diaz noticed a passing [¶] atrol car. He flagged down the vehicle and informed the sheriffs inside about the assault he had just witnessed.

Diaz and Los Angeles County Sheriff's Department Deputy Sheriff Andy Cope went to the crime scene. Appellant was sitting on a chair next to Blanco, who was bleeding profusely from his left ear. Appellant, who was holding a can of beer, poured out its contents on Blanco's head. Cope handcuffed appellant and retrieved the brick from the riverbed.

Gregory Lee Engman testified that on September 8, he and appellant were having a conversation when a stranger approached. When appellant went to urinate, the stranger grabbed a brick and struck him seven to eight times in the head.

Los Angeles Sheriff's Department Deputy Sheriff Luis Pacheco testified he interviewed Engman that night. Engman told him that appellant and Blanco had been arguing. Blanco then grabbed a brick and continued arguing with appellant. Shortly thereafter, Blanco dropped the brick. Appellant picked it up and struck Blanco six to eight times in the face. Deputy Pacheco also interviewed appellant that evening. Appellant told the deputy that when he poured the beer on Blanco, he stated, "He wasted my beer, so I let him have it. That piece of shit doesn't deserve to live."

B.     *Defense Case*

Appellant testified in his defense.  He admitted suffering convictions for battery in 1986, battery on a peace officer in 1991, resisting arrest with violence in 1991, lewd act on a child in 1992, and assault on a peace officer in 1995.

Appellant testified that on September 8, he was drinking with Blanco and Engman.  Blanco -- who claimed to be an American Indian -- began "rambling on about how the white man had been mistreating his forefathers over the ages."  He accused appellant of being part of the destruction of his people.  Blanco then grabbed a brick from a pile of bricks appellant had collected to build a firepit, and told appellant, "The spirits have spoken, and they command that you die, and they have instructed me to kill you."  Blanco then struck appellant in the head with the brick.  Because appellant's right leg is disabled, he retaliated by striking Blanco with his left knee and his elbows.  Blanco became dazed and dropped the brick.  Blanco kept muttering, "I shall kill you.  I shall kill you.  The spirits have spoken and command that I kill you."  Appellant picked up the brick and used it to strike Blanco.  Blanco fell to the ground, and appellant struck him in the head with the brick several times.

An African-American male and a Hispanic male then approached appellant.  Appellant gave the brick to the Hispanic male, who threw it away.  Appellant sat down and began drinking.  When law enforcement arrived, appellant informed them that Blanco had threatened and attacked him.  He poured his beer on Blanco to "try to wake up the alleged victim, because he probably needed to talk to the police too."

Egzine Richardson, a nurse practitioner with the Los Angeles Sheriff's Department, testified she performed a medical examination of appellant on September 9, 2014.  She observed a minor abrasion on the top of his head.  Scott

6

Charles Musgrove, a psychologist, performed a mental health examination of appellant. He diagnosed appellant with symptoms consistent with suffering from a concussion.

Cynthia Forkland, Blanco's sister, testified that on July 23, 2012, she had an argument with her brother. Blanco splashed some rubbing alcohol onto her clothes and then tried to burn her with a lighter. Forkland called 911, and Blanco was later charged with assault with a deadly weapon. Despite this incident, after Blanco was injured by appellant, she went to the hospital to visit him.

## DISCUSSION

As noted above, under our Supreme Court's recent decision in *Castillolopez*, appellant's convictions on counts 3 and 4 for possession of a dirk or dagger must be reversed. We turn to his remaining arguments.

A. *Sufficiency of the Evidence*

Appellant contends there was insufficient evidence to support his conviction for attempted voluntary manslaughter of Blanco, as the evidence showed he was acting in self-defense. With respect to count 1, the attempted murder charge, the jury was instructed that it could convict appellant of the lesser offense of attempted voluntary manslaughter if it found that he acted in imperfect self-defense. (See *People v. Stitely* (2005) 35 Cal.4th 514, 551 ["An unlawful killing involving either an intent to kill or a conscious disregard for life constitutes voluntary manslaughter, rather than murder, when the defendant acts upon an actual but unreasonable belief in the need for self-defense."].) The jury convicted appellant of attempted voluntary manslaughter, and there is sufficient evidence in the record to support that verdict.[2] Diaz testified that appellant struck Blanco with a clay

_____

[2] "In determining whether the evidence is sufficient to support a conviction . . . , 'the relevant question is whether, after viewing the evidence in the

7

brick multiple times while Blanco was lying motionless on the ground. Blanco did not move in response to being hit. Based on Diaz's testimony, it was unreasonable for appellant to believe he was in imminent danger of being killed or suffering great bodily injury, or to believe immediate use of deadly force was necessary to defend himself from Blanco. On this record, the jury could reasonably have concluded that appellant's multiple strikes to Blanco's head while Blanco was lying motionless on the ground constituted attempted voluntary manslaughter. In short, substantial evidence suports the jury's verdict on count 1.

B.    *Denial of Mistrial Motion*

Appellant next contends a mistrial should have been declared after the trial judge told appellant not to make threats, arguing that the judge's comment constituted prejudicial and reversible judicial misconduct. For the reasons set forth below, we reject his claim.

---

light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' [Citations.] Under this standard, 'an appellate court in a criminal case . . . does not ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt.' [Citation.] Rather, the reviewing court 'must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence -- that is, evidence which is reasonable, credible, and of solid value -- such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' [Citation.]" (*People v. Vy* (2004) 122 Cal.App.4th 1209, 1224, italics omitted.) "In deciding the sufficiency of the evidence, a reviewing court resolves neither credibility issues nor evidentiary conflicts. [Citation.] Resolution of conflicts and inconsistencies in the testimony is the exclusive province of the trier of fact. [Citation.] Moreover, unless the testimony is physically impossible or inherently improbable, testimony of a single witness is sufficient to support a conviction. [Citation.]" (*People v. Young* (2005) 34 Cal.4th 1149, 1181.)

### 1.    *Relevant Factual Background*

Before trial commenced, the judge instructed the jury:  "Do not take anything I say or do during the trial as an indication of what I think about the facts, the witnesses, or what your verdict should be."  The jury was also instructed:  "You must disregard anything you see or hear when the court is not in session, even if it is done or said by one of the parties or witnesses."

On January 15, 2015, after the parties had rested and outside the presence of the jury, appellant's counsel informed the court that appellant wanted to file "a 995 on counts 2 through 5," i.e., a motion pursuant to section 955 to dismiss those counts.  Counsel stated this issue had been discussed before trial.  The court agreed and stated, "I'm not going to entertain it again."  The jury was notified to come into the courtroom.  Appellant then asked, "May I ask, sir, why?"  The court responded, "Mr. Linden, no."  Appellant repeated his question, and the court responded, "No, you may not."  Appellant made an unintelligible comment, and the court stated, "Mr. Linden, I'm going to ask you to please be quiet."  As the jurors began entering the courtroom, appellant stated, "Fuck the jury, and him."  The following colloquy then occurred.

> "The Court:  Mr. Linden, if I hear that language from you again -- Mr. Linden."
>
> "The Defendant:  Yes, sir."
>
> "The Court:  If I hear that language from you again, if I hear a threat, you will not remain in the courtroom.  Is that understood, Mr. Linden?"
>
> "The Defendant:  Yes, sir."

Defense counsel subsequently moved for a mistrial.  She stated that although appellant's comment was disrespectful and offensive, she did not believe it was a threat.  She expressed her concern that the jurors would not give appellant a fair

9

trial after hearing the judge say to appellant "If there are any more threats . . . ." The trial judge denied the motion, finding that appellant "ha[d] brought that upon himself" and that he (the judge) had acted to restore order in the courtroom. Appellant later moved for a new trial on the same ground, which the court denied.

2. *Analysis*

A trial court has "both the duty and the discretion to control the conduct of the trial." (*People v. Snow* (2003) 30 Cal.4th 43, 78.) In resolving whether a trial judge made improper comments, "'[o]ur role . . . is not to determine whether the trial judge's conduct left something to be desired, or even whether some comments would have been better left unsaid. Rather, we must determine whether the judge's behavior was so prejudicial that it denied [the defendant] a fair, as opposed to a perfect, trial.'" (*Ibid.*, quoting *United States v. Pisani* (2d Cir. 1985) 773 F.2d 397, 402.)

Here, appellant has not shown that the trial judge's comments denied him a fair trial. First, we presume that any jurors who heard the remarks followed the trial court's instructions, and ignored the comments of both appellant and the trial judge. (See *People v. Wilson* (2008) 44 Cal.4th 758, 803 [presumption is that "'jurors understand and follow the court's instructions'"].) Second, with respect to jurors who heard both appellant's and the judge's comments, any resulting prejudice was due solely to appellant's own conduct. With respect to jurors who heard only the judge's comment, they would have understood that appellant had used disrespectful and inappropriate language, not threats. The judge stated: "If I hear that language from you again, if I hear a threat, you will not remain in the courtroom." He did not say that appellant had made threats. In short, appellant has not shown the judge's comment was prejudicial. Accordingly, the trial court properly denied appellant's mistrial motion and his motion for a new trial. (See

10

*People v. Ayala* (2000) 23 Cal.4th 225, 282 [mistrial motion should be granted only when party's chances of receiving a fair trial have been irreparably damaged]; cf. *People v. Sherrod* (1997) 59 Cal.App.4th 1168, 1175 [trial court may grant a new trial if it determines defendant has been denied a fair trial].)

C.      *Alleged Prosecutorial Misconduct*

Appellant contends the prosecutor committed misconduct during opening statement when he described the factual allegations underlying counts 2 and 5, but later presented no evidence to support those allegations.

1.      *Relevant Factual Background*

The prosecutor listed Joseph Brown on the prospective witness list, and the prospective jurors were so informed during voir dire. After the jury was selected, in his opening statement the prosecutor informed the jury that appellant was being charged with several counts arising from two separate incidents. Counts 2 (assault with a deadly weapon), 3, 4 (carrying a dirk or dagger) and 5 (exhibiting a deadly weapon) were based on a July 8, 2014 incident. The prosecutor then summarized the anticipated testimony as follows: Appellant was waiting in line at a food truck, and arguing with a female companion. Brown, who was standing behind them, asked a food truck employee, "Hey, how much are french fries?" Appellant turned around and looked at Brown. He pulled out a pocket knife, pointed it toward Brown's stomach, and said, "Have you had fish filet?" Brown, who was with his fiancée's little brother, grabbed the boy, placed the child behind him, and stepped away in fear. Brown contacted security, and security personnel detained and searched appellant. They seized two pocket knives from appellant's pants pockets.

After the prosecution presented its last witness, the defense moved for dismissal of counts 2 and 5, pursuant to section 1118.1 for lack of evidence. The People did not object; as the prosecutor explained, "we don't have the witness,

11

[Joseph] Brown, in court, despite being ordered back by this court." The court dismissed those counts, and promptly informed the jury about the dismissal. Before jury deliberations, the court also instructed the jury: "Counts 2 and 5 charging the defendant with assault with a deadly weapon and exhibiting a deadly weapon no longer need to be decided in this case. Do not speculate about or consider in any way why you no longer need to decide these counts."[3]

Following trial, appellant moved for a new trial on the ground, inter alia, that the prosecutor tainted the jury when he referred to evidence never presented to the jury. In response, the prosecutor argued that he made his opening statement in good faith. He noted that Brown had been under subpoena and had previously shown up in court. On the date he was due to testify, however, Brown could not be present because his uncle was in the hospital. Thereafter, the prosecutor was unable to contact him. The court denied the motion for a new trial.

2.    *Analysis*

"'A prosecutor who uses deceptive or reprehensible methods to persuade the jury commits misconduct . . . .'" (*People v. Friend* (2009) 47 Cal.4th 1, 29.) "[R]emarks made in an opening statement cannot be charged as misconduct unless the evidence referred to by the prosecutor 'was "so patently inadmissible as to charge the prosecutor with knowledge that it could never be admitted."'" (*People v. Wrest* (1992) 3 Cal.4th 1088, 1108, quoting *People v. Martinez* (1989) 207 Cal.App.3d 1204, 1225, fn. 5.) Additionally, "prosecutorial misconduct in an opening statement is not grounds for reversal of the judgment on appeal unless the

_____

[3]    The two counts remaining in connection with the July 8 incident were counts 3 and 4, charging appellant with carrying a dirk or dagger. As noted, the jury found appellant guilty of those counts, but in light of *Castillolopez*, those convictions must be reversed.

misconduct was prejudicial or the conduct of the prosecutor so egregious as to deny the defendant a fair trial." (*People v. Harris* (1989) 47 Cal.3d 1047, 1080.)

Here, the prosecutor's opening statement summarized the testimony he anticipated introducing through Brown. Brown was under subpoena to appear at trial and had appeared in court on a previous occasion. Appellant does not dispute the prosecutor's assertion that when he made the statement, he had a good faith belief that Brown would appear for trial. On this record, we find no prosecutorial misconduct.[4]

Appellant's reliance on *People v. Hill* (1998) 17 Cal.4th 800 (*Hill*), is misplaced. There, our Supreme Court held that a defendant need not show that a prosecutor acted in bad faith to state a claim for misconduct. (*Id.* at pp. 822-823.) *Hill* does not assist appellant, as the inquiry here is not whether the prosecutor intentionally or inadvertently, in good or bad faith, made his comments summarizing Brown's proposed testimony, but whether the prosecutor could be charged with knowledge that Brown would not appear at trial, despite being subpoenaed. As noted, the record does not show that when the prosecutor made the challenged statements, he knew or should have known that Brown would not appear at trial.

D.     *Impeachment with Prior Conviction for Lewd Act on a Child*

In a pretrial motion, defense counsel requested that the prosecutor not be permitted to impeach appellant with his 1992 conviction for lewd act on a child, as

---

[4]     As we have determined there was no misconduct, we reject appellant's contention that his trial counsel's failure to object to the prosecutor's statements constituted ineffective assistance of counsel. As there was no misconduct, appellant cannot show that counsel's performance was deficient or prejudicial. (See *Strickland v. Washington* (1984) 466 U.S. 668, 687-688 [to prevail on claim of ineffective assistance of counsel, appellant must show both inadequate performance and prejudice].)

13

informing the jury of the conviction was unduly prejudicial. Alternatively, she requested that the court sanitize the conviction to "a felony conviction arising to moral turpitude." The trial court ruled that the People would be permitted to impeach appellant with the 1992 conviction: "The People are going to be allowed to use those titles and not go into the underlying facts." Following this ruling, when appellant testified, defense counsel elicited his admission that he had been convicted following a plea to a crime worded as "lewd and lascivious assault on a child." Defense counsel also elicited that appellant previously had been convicted of battery, battery on a peace officer, resisting arrest with violence, and assault on a peace officer. The prosecutor never mentioned any prior conviction during cross-examination, but briefly mentioned the convictions in closing argument as facts relevant to appellant's credibility.

Appellant now contends the trial court abused its discretion in failing to sanitize the prior conviction for lewd act on a child to "a crime involving moral turpitude." He argues that the error was prejudicial, as there was a significant risk the jury would find appellant guilty because he was a child predator, not based on the evidence. We disagree.

"A witness may be impeached with any prior conduct involving moral turpitude whether or not it resulted in a felony conviction, subject to the trial court's exercise of discretion under Evidence Code section 352." (*People v. Clark* (2011) 52 Cal.4th 856, 931.) "Because the [trial] court's discretion to admit or exclude impeachment evidence 'is as broad as necessary to deal with the great variety of factual situations in which the issue arises' [citation], a reviewing court ordinarily will uphold the trial court's exercise of discretion [citations]." (*Id.* at p. 932.) Appellant concedes that his 1992 conviction for lewd act on a child is a crime involving moral turpitude, but argues that the title should have been

14

sanitized to minimize the prejudicial effect of a prior felony conviction. We find no prejudicial abuse of discretion. As noted, the 1992 conviction was mentioned only once by each side in a summary manner, and the prosecutor's comments referring to appellant's prior convictions focused on their relevance to appellant's credibility. (See *People v. Hinton* (2006) 37 Cal.4th 839, 888 ["Each side elicited the fact of the three impeaching convictions in very summary fashion. Defendant could not have been prejudiced by this procedure."].) In any event, given appellant's admission of multiple other felony convictions, we discern no prejudice.

>    E.    *Admission of Prior Conviction Allegations*

>        1.    *Relevant Factual Background*

Before trial, the court discussed the possibility of a plea bargain, noting appellant's familiarity with Florida's penal system -- which the court believed was similar to California's. The court noted that the prosecution was offering 11 years consisting of a base term for assault with a deadly weapon, plus a GBI enhancement, doubled for the strike allegation, plus five years for the section 667, subdivision (a) prior conviction allegation. The court opined that the People's offer was not unreasonable. Appellant responded, "It's a little high, in my opinion."

On January 16, 2015, appellant was informed of -- and waived -- his right to a jury trial on the prior conviction allegations, his right to confront and cross-examine witnesses and to call witnesses, and his right to remain silent during any trial on the priors.

On February 25, 2015, appellant filed a combined motion for a new trial and sentencing memorandum. In the sentencing memorandum, appellant requested that the court strike the "strike" pursuant to *People v. Romero* (1996) 13 Cal.4th

497.  He acknowledged that the court could impose four years for the four section 667.5, subdivision (b) priors, but requested that the court strike two of the priors and impose two years for the most recent prison priors.  As to the section 667, subdivision (a)(1) allegation, appellant noted that the court would impose a mandatory five-year enhancement.

On March 25, 2015, after having granted appellant several continuances, the court stated that it would grant appellant about 30 days for a last continuance.  The court then stated:  "It's my understanding, though, that you're going to be admitting your priors today . . . instead of having a priors trial, so the People can let go of their clerk.  So Mr. Orquiola [the prosecutor] is going to be taking that from you."

The prosecutor then stated:  "Mr. Linden, you have the right to have a court determine whether or not you suffered prior convictions pursuant to Penal Code section 667.5(b).  Sir, do you understand that right?"  Appellant responded, "Yes, sir."  The prosecutor then responded:  "And do you give up that right, and do you wish to admit the prior convictions as explained to you by your defense attorney?"  Appellant answered, "Yes, sir."  The prosecutor then set forth four section 667.5, subdivision (b) prior conviction allegations, and appellant admitted having suffered each conviction.  The prosecutor also inquired about the strike allegation, asking whether appellant admitted committing a lewd act upon a child "for purposes of a strike as well as the five year enhancement under Penal Code section 667(a)(1)?"  Appellant responded, "I admit," and counsel joined.

2.     *Analysis*

Appellant contends his convictions on the priors should be reversed because he was not advised of the penal consequences of admitting to the priors.  He further contends that as to two of the section 667.5, subdivision (b) priors, he did

16

not admit to having served a separate prison term and committing a new crime within the five-year washout period.

"When a criminal defendant enters a guilty plea, the trial court is required to ensure that the plea is knowing and voluntary." (*People v. Cross* (2015) 61 Cal.4th 164, 170 (*Cross*), citing *Boykin v. Alabama* (1969) 395 U.S. 238, 243-244.) In *Cross*, our Supreme Court reaffirmed its prior holding that before "a defendant admits the truth of a prior conviction allegation that subjects him to increased punishment," "[a]s a prophylactic measure, the court must inform the defendant of three constitutional rights -- the privilege against compulsory self-incrimination, the right to trial by jury, and the right to confront one's accusers -- and solicit a personal waiver of each." The court also reaffirmed "'a judicially declared rule of criminal procedure'" that "a defendant must also be advised of 'the full penal effect of a finding of the truth of an allegation of prior convictions.'" (*Ibid.*, quoting *In re Yurko* (1974) 10 Cal.3d 857, 865.) Thus, "an accused, before admitting a prior conviction allegation, must be advised of the precise increase in the prison term that might be imposed, the effect on parole eligibility, and the possibility of being adjudged a habitual criminal." (*Id.* at pp. 170-171.) However, any error is not reversible per se. "Instead, the test for reversal is whether 'the record affirmatively shows that [the guilty plea] is voluntary and intelligent under the totality of the circumstances.'" (*Id.* at p. 171, quoting *People v. Howard* (1992) 1 Cal.4th 1132, 1175.)

Here, appellant was advised of and waived his constitutional rights to a jury trial, to confront adverse witnesses, and to exercise his privilege against self-incrimination. However, there was no express advisement of the penal consequences of his admission to the priors. Nor did appellant expressly admit the existence of the requisite prison term served and the nonexistence of the five-year

17

"washout" period. Nevertheless, under the totality of the circumstances, appellant's admission to the priors was voluntary and intelligent. Appellant was advised before trial that a "strike" would double the base term of an offense, and that a section 667, subdivision (a) conviction would result in a five-year sentencing enhancement. In appellant's sentencing memorandum, he acknowledged that the section 667, subdivision (a)(1) allegation would result in a five-year enhancement, and that each of the section 667.5, subdivision (b) allegations would result in a one-year enhancement. He requested that the court strike the "strike" and two of the section 667.5, subdivision (b) allegations. Thus, "[t]he record fully demonstrates that appellant was informed of the sentencing consequences of his admission and argued them to the trial court." (*People v. Wrice* (1995) 38 Cal.App.4th 767, 771 [rejecting appellant's claim that his admission to priors was not voluntary and intelligent where appellant's sentencing memorandum acknowledged section 667, subdivision (a) and 667.5, subdivision (b) enhancements and asked the court to stay the latter].) Additionally, the admissions were made after consultation with trial counsel. Finally, appellant was familiar with the penal system, opining that the proposed plea for 11 years was too high. (See *Cross*, *supra*, 61 Cal.4th at p. 180 [previous experience in the criminal justice system relevant to recidivist's knowledge and sophistication regarding his legal rights and thus relevant to whether plea was voluntary and intelligent].) In short, under the totality of the circumstances, appellant's admission to the priors was voluntary and intelligent.

F.      *Cumulative Error*

Appellant contends the cumulative effect of the claimed trial errors mandates reversal of his conviction on count 1. Because we have found no errors,

his claim of cumulative error fails.  (See *People v. Seaton* (2001) 26 Cal.4th 598, 639; *People v. Bolin* (1998) 18 Cal.4th 297, 335.)

        G.      *Clerical Error in Abstract of Judgment*

Finally, appellant contends the abstract of judgment incorrectly shows a "667(b) enhancement" instead of a section 667.5, subdivision (b) enhancement. We will order the error corrected.

## DISPOSITION

The convictions on counts 3 and 4 for possession of a dirk or dagger are reversed, and the sentences on those counts stricken.  The abstract of judgment shall be corrected to reflect the imposition of a section 667.5 enhancement instead of a section 667, subdivision (b) enhancement.  In all other respects, the judgment is affirmed.  The clerk of the superior court is directed to prepare an amended abstract of judgment and forward it to the Department of Corrections and Rehabilitation.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.**

                             MANELLA, J.

We concur:

EPSTEIN, P. J.                         WILLHITE, J.